UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| v. | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| WELLSTAR HEALTH | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Mary Godwin ("Plaintiff") files this Complaint against Defendant

WellStar Health Systems, Inc. ("Defendant"), alleging as follows:

### INTRODUCTION

1.      Plaintiff was formerly employed by Defendant as a Buyer.

2.      Plaintiff is sixty-four (64) years old.

3.      Plaintiff is disabled, suffering from both rheumatoid arthritis and

osteoporosis.

4.      Plaintiff brings this action under the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*, and the Americans with

Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"),

42 U.S.C. § 12101, *et seq.*  Plaintiff asserts claims for discrimination and

retaliation under the ADEA, and discrimination and failure to accommodate under the ADAAA.  Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, liquidated damages, punitive damages, and attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

6.      The unlawful violations of Plaintiff's civil rights were committed within the Northern District of Georgia.  Venue is proper in this Court under 28 U.S.C. § 1391.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      Plaintiff satisfied all administrative prerequisites to perfect her claims under the ADEA and the ADAAA.  Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

8.      Plaintiff brings this suit within ninety (90) days of receipt of her notice of right to sue.

## THE PARTIES

9.     Plaintiff is now and was at all times relevant to this action, a resident of the State of Georgia.

10.     Defendant is a Georgia corporation with its Principal Office Address at 805 Sandy Plains Road, Marietta, Georgia 30066-6340.

11.     According to its website, Defendant has more than 12,000 employees, five hospitals, five urgent care centers, 14 satellite diagnostic imaging centers, one adult congregate living facility, one inpatient hospice and "[m]ore than 100 WellStar Medical Group practice locations."

12.     Defendant states that it serves "a population of more than one million residents of NW metropolitan Atlanta."

13.     Defendant is a covered employer under the ADEA and ADAAA.

14.     Defendant may be served with summons and a copy of the Complaint in this action by delivering process to its registered agent for service of process, Leo E. Reichert, at 805 Sandy Plains Road, Marietta, Georgia 30066-6340.

## STATEMENT OF FACTS

15.     Defendant employed Plaintiff as a Buyer from approximately May 13, 2001 to June 22, 2011.

16.     For approximately nine years, from May 2001 to spring or summer

2010, Plaintiff had never been subjected to disciplinary action or placed on a performance improvement plan.

17.    In spring or summer 2010, Cherise Brown became Plaintiff's supervisor.

18.    Ms. Brown's title was Department Manager.

19.    About a month after Ms. Brown took on the role of Department Manager, Ms. Brown began a campaign of harassment against the older employees under her supervision, including unfair performance criticism, unmerited discipline, and finally, discriminatory termination.

20.    The first victim of Ms. Brown's age-based animus was Neal Reed, a Senior Buyer who was approximately 67 years old.

21.    Mr. Reed was very capable in his Senior Buyer position, a position that he had been performing for at least 10 years.

22.    On a regular basis, Ms. Brown was extremely critical of Mr. Reed's performance.

23.    In the face of Ms. Brown's harassment, Mr. Reed quit.

24.    Ms. Brown next turned her attention to David Wells, a Contract Analyst in his 60s, who had been working for Defendant for approximately nineteen (19) years.

25.     Ms. Brown purposely assigned Mr. Wells multiple tasks within a short timeframe that were impossible for Mr. Wells to simultaneously complete under Ms. Brown's deadlines, and then disciplined Mr. Wells for his inability to complete such tasks.

26.     Ms. Brown proceeded to put Mr. Wells on a performance improvement plan in October 2010 and terminated him in December 2010 because, after nineteen years, Mr. Wells "didn't have the skills needed to do the job."

27.     Ms. Brown first put Plaintiff on a performance improvement plan in September 2010.

28.     Ms. Brown's placement of Plaintiff on a performance improvement plan in September 2010 was for illegitimate reasons and in furtherance of Ms. Brown's overarching goal of terminating all older workers under her supervision.

29.     Ms. Brown successfully completed the September 2010 performance improvement plan.

30.     Following the placement of Plaintiff on a performance improvement plan in September 2010, Ms. Brown told Plaintiff that she was not allowed to leave her cubicle and was required to obtain Ms. Brown's permission to go to the restroom.

31.     At all relevant times, Plaintiff was a qualified individual with a

disability, as defined by the ADAAA.

32.     Due to Plaintiff's rheumatoid arthritis and osteoporosis, she had to stand up periodically and walk.

33.     Plaintiff informed Ms. Brown of her health conditions and need to stand up periodically and walk.

34.     Plaintiff provided Ms. Brown with a doctor's note stating that Plaintiff needed to stand up periodically and walk.

35.     Plaintiff provided a copy of the doctor's note to Ms. Brown, Director Ken Tifft, and to Human Resources.

36.     Ms. Brown refused to reasonably accommodate Plaintiff and told Plaintiff that she could not stand up and walk without first getting permission from Ms. Brown.

37.     On numerous occasions, Plaintiff could not even seek permission from Ms. Brown to stand up and walk, as was medically required, because Ms. Brown was either not in her office or had her door closed.

38.     When Plaintiff asked Ms. Brown what she should do if Ms. Brown was not in her office, or had the door closed, and Plaintiff needed to stand up and walk, Ms. Brown told Plaintiff to "just deal with it."

39.     Defendant's refusal to reasonably accommodate Plaintiff for her

disabilities caused Plaintiff severe physical pain and emotional distress and made her medical conditions worsen.

40.     After Ms. Brown terminated Mr. Wells, Plaintiff's coworkers recognized that Ms. Brown was targeting Plaintiff and told Plaintiff that she was "next."

41.     Ms. Brown started making ageist comments to Plaintiff.

42.     Ms. Brown asked Plaintiff how old she was.

43.     Ms. Brown stated to Plaintiff: "I think at your age you would want to be home with your husband."

44.     Ms. Brown told Plaintiff on multiple occasions that she should have made provision for being out of work when she was young.

45.     Ms. Brown stated: "I want people who are able to hit the ground running," as opposed to Plaintiff.

46.     Ms. Brown accused Plaintiff of not being "mentally capable of understanding" her.

47.     Ms. Brown put Plaintiff on a second performance improvement plan in February 2011.

48.     Ms. Brown's placement of Plaintiff on a second performance improvement plan in February 2011 was for illegitimate reasons and in furtherance

of Ms. Brown's overarching goal of terminating all older workers under her supervision.

49.     Ms. Brown successfully completed the February 2011 performance improvement plan.

50.     Director Ken Tifft told Plaintiff that she would have a job as long as he was with the company.

51.     Mr. Tifft went out on medical leave in May 2011.

52.     Just before Mr. Tifft went out on medical leave in May 2011, Plaintiff told Mr. Tifft that Ms. Brown would fire her while Mr. Tifft was on leave.

53.     Mr. Tifft responded that Ms. Brown "had better not."

54.     In April or May 2011, Ms. Brown instructed Plaintiff to prepare an RFP.

55.     As Plaintiff was not a Senior Buyer, she had never before prepared an RFP and informed Ms. Brown of same.

56.     As Plaintiff had never before prepared an RFP, she asked Ms. Brown if she could consult with other employees to help her complete the RFP project.

57.     Ms. Brown told Plaintiff that, despite the fact that Plaintiff had never before prepared an RFP, Plaintiff was not permitted to consult with other employees to help her complete the RFP project.

8

58.     In assigning Plaintiff the RFP project, which she had never before completed, and telling Plaintiff that she could not consult other employees regarding the RFP project, Ms. Brown was attempting to manufacture a situation in which Plaintiff would fail, enabling Ms. Brown to terminate her.

59.     Having no alternative, Plaintiff consulted with her daughter (not an employee of Defendant) regarding the RFP project.

60.     Plaintiff's daughter, a consultant, had experience preparing high-level RFPs, including RFPs for hospitals.

61.     With the experienced assistance of her daughter, Plaintiff timely turned in the RFP that Ms. Brown requested.

62.     When Plaintiff timely turned in the RFP, Ms. Brown looked at the first page, and without explanation, flung the RFP across her desk and told Plaintiff that is was "unacceptable."

63.     In or around May 2011, Plaintiff again complained to Human Resources that she believed that Ms. Brown was discriminating against her based on Plaintiff's age, and was not accommodating her disability.

64.     On May 9, 2011, Human Resources informed Plaintiff that it was conducting an investigation into Plaintiff's complaints regarding Ms. Brown.

65.     Mary Louise Tavanarro and Kris Betts of Defendant's Human

Resources department instructed Plaintiff to take time off while they investigated her allegations and told Plaintiff that she would be called on May 10, 2011.

66.    Human Resources did not call Plaintiff on May 10, 2011 and, when Plaintiff followed-up, Human Resources told her to take additional time off.

67.    Plaintiff took the entire week of May 9-13, 2011 off while she awaited the results of the Human Resources investigation.

68.    Plaintiff took a pre-planned vacation the subsequent week.

69.    When Plaintiff returned to work on May 23, 2011, Human Resources informed her that it conducted an investigation of her discrimination complaint but did not find discrimination.

70.    On June 22, 2011, Ms. Brown summoned Plaintiff to a meeting with her, Kris Betts (HR) and Executive Vice President Tony Trupiano.

71.    In the June 22, 2011 meeting, Plaintiff was told that she had a choice between being involuntarily fired and resigning and that, if she resigned she would receive her paid time off (PTO), but if she did not resign she would not receive her PTO and it would go on her "permanent record."

72.    Plaintiff declined to resign and was involuntarily fired on June 22, 2011.

73.    After Plaintiff was fired, Ms. Brown smiled and said "by the way,

your insurance will cancel on the 30th."

74.     Ms. Brown was aware that Plaintiff's husband is disabled and relied on Plaintiff's insurance, and had previously suggested that Plaintiff should stay home to care for him.

75.     Plaintiff was replaced by a much younger male, who is in his 30s.

76.     As a result of Defendant's discrimination and retaliation, Plaintiff has, *inter alia,* incurred and continues to incur lost wages and benefits, decreased job prospects, and has suffered emotional distress.

77.     In discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly, and intentionally to harm Plaintiff and her federally protected rights.  Additionally, and in the alternative, Defendant acted with reckless disregard for Plaintiff and her federally protected rights.

## COUNT ONE
### AGE DISCRIMINATION IN VIOLATION OF THE ADEA

78.     Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

79.     Plaintiff is sixty-four years old and, at all relevant times, was an employee protected by the ADEA.

80.     At the time of her termination, Plaintiff was more than qualified for the position she held, Buyer, having performed that same position for over 10

11

years.

81.    Plaintiff's supervisor, Cherise Brown, harbored a discriminatory animus towards older employees under her supervision.

82.    Upon assuming the role of Department Manager, Ms. Brown systematically terminated older employees under her supervision.

83.    Ms. Brown discriminated against Plaintiff in violation of the ADEA by, *inter alia*, unfairly criticizing her performance, putting her on two unwarranted performance improvement plans, attempting to assign Plaintiff a task with parameters that would ensure that Plaintiff failed in its completion, and, finally, by terminating Plaintiff's performance.

84.    Plaintiff was replaced by an individual in his 30s and outside of her protected class.

85.    Ms. Brown's discriminatory actions were authorized, ratified, and condoned by Defendant.

86.    Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT TWO
## <span>RETALIATION IN VIOLATION OF THE ADEA</span>

87.     Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

88.     Plaintiff engaged in protected activity under the ADEA by complaining on numerous occasions to Defendant's Human Resources department that Cherise Brown was discriminating against Plaintiff on the basis of her age.

89.     Less than a month after Human Resources investigated Plaintiff's complaints of age discrimination, Defendant terminated Plaintiff's employment.

90.     Defendant's termination of Plaintiff's employment was in direct retaliation for Plaintiff's protected conduct of reporting her supervisor's age-based discrimination.

91.     Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT THREE
### DISCRIMINATION AND FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADAAA

92.    Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

93.    Plaintiff was a qualified individual with disabilities, rheumatoid arthritis and osteoporosis.

94.    Plaintiff's disabilities substantially limited one or more major life activities.

95.    Plaintiff requested a reasonable accommodation from Defendant relating to her disabilities: that she be permitted to periodically stand up and walk around.

96.    Plaintiff provided Defendant with a doctor's note substantiating the reasonable accommodation that she was requesting.

97.    Plaintiff's direct supervisor, Cherise Brown, denied Plaintiff the reasonable accommodation that she was requesting.

98.    Ms. Brown told Plaintiff that she could not leave her cubicle without Ms. Brown's permission and even told her that she could not go to the bathroom without Ms. Brown's permission.

99.    When Plaintiff asked Ms. Brown what Plaintiff should do if Ms.

Brown was unavailable and therefore Plaintiff could not ask her permission to stand up or go to the bathroom, Ms. Brown told Plaintiff to "just deal with it."

100.   Ms. Brown's actions were authorized, ratified, and condoned by Defendant.

101.   Defendant's failure to accommodate Plaintiff's disability caused Plaintiff severe physical pain and emotional distress, and made her medical conditions worsen.

102.   Plaintiff is entitled to an award of compensatory and punitive damages and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## COUNT FOUR
## <u>Retaliation in Violation of the ADAAA</u>

103.   Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

104.   Plaintiff was a qualified individual with disabilities, rheumatoid arthritis and osteoporosis.

105.   Plaintiff's disabilities substantially limited one or more major life activities.

106.   Plaintiff requested a reasonable accommodation from Defendant relating to her disabilities: that she be permitted to periodically stand up and walk

around.

107.   Plaintiff provided Defendant with a doctor's note substantiating the reasonable accommodation that she was requesting.

108.   Plaintiff's direct supervisor, Cherise Brown, denied Plaintiff the reasonable accommodation that she was requesting.

109.   Ms. Brown told Plaintiff that she could not leave her cubicle without Ms. Brown's permission and even told her that she could not go to the bathroom without Ms. Brown's permission.

110.   When Plaintiff asked Ms. Brown what Plaintiff should do if Ms. Brown was unavailable and therefore Plaintiff could not ask her permission to stand up or go to the bathroom, Ms. Brown told Plaintiff to "just deal with it."

111.   Ms. Brown's actions were authorized, ratified, and condoned by Defendant.

112.   Defendant's failure to accommodate Plaintiff's disability caused Plaintiff severe physical pain and emotional distress, and made her medical conditions worsen.

113.   Plaintiff engaged in protected activity under the ADAAA by (1) requesting a reasonable accommodation for her disabilities and by (2) complaining to Defendant's Human Resources department regarding Defendant's failure to

accommodate Plaintiff's disabilities.

114.   Plaintiff's termination was in direct retaliation for her protected activity under the ADAAA.

115.   Plaintiff is entitled to an award of back pay and benefits, front pay, compensatory and punitive damages and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.   That this Court take jurisdiction of this matter;

B.   That process be served;

C.   That Plaintiff be awarded a declaratory judgment that Defendant violated the ADEA;

D.   That Plaintiff be awarded a declaratory judgment that Defendant violated the ADAAA;

E.   That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADEA, and the ADAAA.

F.      That the Court award Plaintiff back pay and all benefits, privileges, and rights previously denied;

G.      That he Court order that Plaintiff be reinstated or, in the alternative, be awarded front pay;

H.      That the Court award liquidated damages under the ADEA;

I.      That the Court award compensatory and punitive damages under the ADAAA in an amount to be determined by the trier of fact;

J.      That the Court award Plaintiff her costs in this action and reasonable attorneys' fees;

K.      That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

L.      That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 26th day of October, 2012.

/s/ Justin M. Scott
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleyklein.com
Justin M. Scott
Georgia Bar No. 557463
jmscott@buckleyklein.com

BUCKLEY & KLEIN, LLP
Promenade II, Suite 900
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  (404) 781-1100
Facsimile:  (404) 781-1101

Attorneys for Plaintiff