IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARY GODWIN, ) | |
| ) | |
| Plaintiff, ) | Civil Action File No: |
| ) | 1:12-cv-3752-WSD |
| ) | |
| v. ) | |
| ) | |
| WELLSTAR HEALTH SYSTEM, INC., ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S REPLY BRIEF IN
### SUPPORT OF ITS MOTION FOR SUMMARY JDUGMENT

Defendant WELLSTAR HEALTH SYSTEM, INC., by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby submits its Reply Brief in Support of Its Motion for Summary Judgment.

### INTRODUCTION

Plaintiff's claims break down into two different parts. First, her claim that the decision to terminate her employment was unlawful. Second, her claim that she was denied an accommodation under the ADA.

In regard to her termination, Plaintiff contends that this decision was unlawful because it was motivated by her age, her disability, and/or her complaint to Human Resources. By Plaintiff's own admission, all of these claims hinge on

her ability to show that Tony Trupiano was a cat's paw for Cherise Brown's allegedly biased recommendation, as she has no evidence to suggest that Trupiano was biased in any way. Accordingly, because the cat's paw issue is independently dispositive of Plaintiff's claims related to her termination, Defendant will address that issue first.

Even if Plaintiff could establish that Trupiano merely rubber stamped Brown's recommendation to terminate Plaintiff's employment, Plaintiff's claims related to her termination still fail as a matter of law. With respect to her retaliation claim, she cannot present a *prima face* case. And, with respect to all of her discrimination and retaliation claims, she cannot show that Defendant's reasons for its decision are pretextual.

Finally, Plaintiff's disability claim fails because she cannot establish that she is disabled as that term is defined by the ADA. Even if she did qualify as an individual with a disability, she cannot show that Defendant failed to provide her with a reasonable accommodation.

## ARGUMENT

I.  **Plaintiff's Claims Related To Her Discharge Cannot Survive Summary Judgment.**

   A.  **Trupiano Was Not A Cat's Paw For Brown's Recommendation.**

As Plaintiff acknowledges, "[o]f paramount importance in this case is who made the termination decision." (Pl. Brief at 17). This is, no doubt, because Plaintiff's claims related to her discharge are completely dependent on establishing that Cherise Brown made the decision at issue because Plaintiff has no evidence to suggest that Trupiano (who was within Plaintiff's same age class and who also suffered from arthritis) harbored any discriminatory or retaliatory motivation.

Contrary to Plaintiff's assertions, the record evidence establishes that Trupiano did not simply "rubber stamp" Brown's recommendation that Godwin's employment be terminated as necessary for Plaintiff to show that Trupiano was cat's paw for Brown's alleged unlawful motivations. *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1332 (11th Cir. 1999) (plaintiff cannot prevail on cat's paw argument where she cannot show that the recommendation was merely "rubber stamped"). Among other undisputed facts:

- Trupiano met with Brown on a weekly basis beginning in June 2011 to discuss the operations of the Purchasing Department and the performance of the employees in the Department, including Plaintiff. (Facts, ¶ 167);

- Trupiano was aware of the multiple performance plans on which Plaintiff had been placed and had been informed by Plaintiff's previous supervisor

(Chris Holihan) about similar problems with Plaintiff's performance. (Facts, ¶ 172);

- Trupiano knew that Plaintiff was tasked with analyzing potential cost savings associated with consolidating the companies providing maintenance at the couple of swimming pools operated by WellStar, but that Plaintiff had not been able to complete the project. (Facts, ¶ 173); and

- Trupiano reviewed a number of Purchase Orders created by Plaintiff to confirm that the problems with her performance were ongoing within the weeks prior to her discharge and occurring at an unacceptable frequency. (Facts, ¶ 174).

Consequently, the undisputed facts clearly show that Trupiano did not, as Plaintiff suggest, merely "rubber stamp" Brown's recommendation.

In her Brief, Plaintiff makes much of Trupiano's testimony that he would not have terminated Plaintiff's employment "but for" Brown bringing the issues about Plaintiff's employment to her attention. The fact that Brown brought the issues to Trupiano's attention is not the determinative factor in establishing cat's paw liability, as Plaintiff puts the "but for" in the wrong place. Otherwise, any time an allegedly biased individual brought information about an employee's misconduct

4

to a higher level employee it would automatically trigger liability regardless of whether the higher level employee independently reviewed the situation. Rather, Plaintiff must "prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." *Dwyer v. Ethan Allen Retail, Inc.*, 325 Fed. App'x 755, 758 (11th Cir. 2009) (*quoting Simpson v. City of Tuscaloosa¸* 186 F.3d 1328, 1331 (11th Cir. 1999)). This she cannot so, as Trupiano reviewed the problems with Plaintiff's purchase orders and concluded that they justified the decision to terminate her employment.

Plaintiff's contention that Trupiano did not independently verify the information Brown provided to him is contrary to the record evidence. As noted above, it is undisputed that Trupiano reviewed a number of Purchase Orders created by Plaintiff to confirm that the problems with her performance were ongoing within the weeks prior to her discharge and occurring at an unacceptable frequency. (Facts, ¶ 174). Quite simply, and without dispute, Trupiano independently evaluated these purchase orders and determined that the errors contained therein and the frequency of the errors justified the decision to terminate Plaintiff's employment. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001) (where a decisionmaker conducts his own evaluation and makes

an independent decision, his decision is "free of the taint of a biased subordinate employee").

Plaintiff also complains that Trupiano did not investigate further, but given that the purchase orders are objective evidence of errors made by Plaintiff and are complete documents in and of themselves, it is unclear what additional investigation Plaintiff contends that Trupiano should have conducted. *See, e.g., Dwyer*, 325 Fed. App'x at 757, 58 (extensive factual investigation was unnecessary under the circumstance because the decisionmaker had reviewed the problematic invoice made by the plaintiff which was provided to the decisionmaker by the allegedly biased individual); *Equal Employment Opportunity Commission v. Frederick J. Hanna & Ass'c*, Civil Action No. 1:08-cv-832, 2009 WL 2600101 at *14 (N.D. Ga. Aug. 11, 2009) (no further investigation was necessary because the plaintiff acknowledged viewing an e-mail in violation of company policy).

Plaintiff also complains that Trupiano did not review purchase order errors by other employees, but the record is void of any suggestion that other Buyers were making similar errors with the frequency of Plaintiff to trigger the need for such an investigation. Indeed, as explained in more detail herein, Ken Tifft testified that he did not see any evidence to suggest that other Buyers were make a similar number of errors. Further, there is no suggestion that Brown fabricated

6

these documents, and Trupiano had previous and independent knowledge of long-standing concerns about Plaintiff's performance, including from Plaintiff's previous supervisor, Chris Holihan, so the concerns raised by Brown were not "out of the blue."

Quite simply, Trupiano's verification of the errors made by Plaintiff coupled with his independent knowledge of the ongoing problems with her performance establish that he did not merely rubber stamp Brown's recommendation. Accordingly, there is no evidence from which a reasonable fact finder could infer that any bias by Brown played any factor - - much less was a "determinative influence" on Trupiano's decision to terminate Plaintiff. Since Plaintiff admits that Trupiano did not harbor any age, disability or retaliatory bias, her inability to establish that Trupiano was a "cat's paw" for Brown's decision is fatal to her claims related to her discharge.

> **B. Even If Trupiano Was A Cat's Paw, Plaintiff's Claims Related To Her Termination Cannot Survive Summary Judgment.**
>> **1. Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation.**

"[A]n intervening act of misconduct severs the inference of causal connection arising from the temporal proximity between the protected activity and the adverse employment action." *Boone v. City of McDonough*, Civil Action No.

1:12-cv-1036, 2013 WL 4670480 at *23 (N.D. Ga. Aug, 20, 2013) (Duffey, J); *see also, Dowlatpanah v. WellStar Health System, Inc.*, 2007 WL 639875, Case No. 1:05-cv-2752-WSD-RGV (N.D. Ga. Feb. 26, 2007) (Duffey, J.).  In an attempt to establish a causal connection, Plaintiff tries to connect her May 4, 2011 complaint to a document that Brown created on May 9, 2011 purporting to "recommend" that Plaintiff's employment be terminated.  The problem with this argument is that Brown's May 9 document was not an adverse employment action, as no action was taken based on the document, and there is no evidence that this "recommendation" was communicated to any other person.  Rather, the connection must be between Plaintiff's complaint on May 4 and the adverse employment action - - the decision to terminate Plaintiff's employment on or about June 21, 2011.

Between the time of her complaint and **the decision** to terminate her employment, Plaintiff was provided with additional notice about the problems with her performance - - in the form of a Counseling on June 4, 2011 (Facts, ¶¶ 163, 164)[1] - - **and was only discharged after the errors on her purchase orders continued and only after the expiration of her 90 day PIP**.  As such, the case at

---

[1] This June 4 Counseling further underscores the irrelevancy of Brown's May 9 memo, as any feeling she may have had about terminating Plaintiff's employment was not acted upon.  Instead, Plaintiff received further warnings about her performance and was only terminated after she continued to make errors on purchase orders.

8

bar is squarely on point with *Boone* and *Dowlatpanah*, where the courts found that intervening acts sever any inference of causal connection and prevent Plaintiff from establishing a *prima facie* case of retaliation, particularly where, as here, the plaintiff had already been put on notice about the problems with her performance.

### 2. Plaintiff Cannot Establish Pretext.[2]

In an effort to show pretext, Plaintiff first argues that other Buyers made purchase order errors. This, of course, is of no significance. This is like saying that because one attorney at a firm was discharged because of continued and frequent typographic errors after being consistently warned about problems with his work product, that any attorney at the firm who makes a typographical error must be fired. Just like all attorneys make typographic errors from time to time, all Buyers make Purchase Order errors. The issue is whether other Buyers made errors with the same frequency over the same amount of time as Plaintiff. On this critical issue, Plaintiff has absolutely no evidence,[3] and it is her burden to provide evidence of pretext.

---

[2] Plaintiff's burden is to show not just that Defendant's reasons were ill-founded, but that unlawful discrimination was the true reason. *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010).

[3] Plaintiff does submit the Declaration of Lynn Bryant, but for the reasons set forth in Defendant's Notice of Objection, this Declaration should be stricken because it does not contain any relevant information. Though Bryant contends that she

The record evidence that does exist on this point establishes that another employee - - Phil Phillips - - who was younger than Plaintiff, was also discharged for purchase order errors.  (Facts, ¶ 202).  Moreover, Ken Tifft, an individual Plaintiff does not accuse of bias, testified that purchase order errors came to his attention through a variety of means other than Brown, but that he did not see evidence that other Buyers were making the same number of purchase order errors as Plaintiff.  (Facts, ¶¶ 187, 188).  In short, Plaintiff's conclusory argument that other Buyers may have made purchase order errors is wholly inadequate to allow her to meet her burden so show pretext.

Plaintiff next points to several comments made by Brown unrelated to the decision to terminate her employment.  (These comments go only to her age discrimination claim.)  As set forth in Defendant's Memorandum, the comments attributed to Brown are the type of comments the Eleventh Circuit has consistently found are insufficient evidence of discrimination to allow a plaintiff to survive summary judgment.  *Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002) (finding that statement that another employee did not deserve her job because she was a women was not sufficient to show pretext in claim for sex discrimination); *Ritchie v. Industrial Steel, Inc.*, 426 Fed. Appx. 867, 873-74 (11th Cir. 2011)

---

reviewed certain purchase orders, she fails to state how many she reviewed, when she reviewed them, or whether she communicated her results to anyone.

(evidence that a decisionmaker referred to plaintiff as an "old man" and made comments about plaintiff's age on one or two occasions was insufficient to establish that decision was pretextual because "general references to [plaintiff's] age do not create a genuine issue of fact as to whether age was the real reason for [plaintiff's] termination").

The cases cited by Plaintiff are clearly distinguishable, as they involve very different comments that show a specific age bias connected with the decision at issue. For example, in *Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1203-04 (11th Cir. 2010), the comments included, "I need someone younger" and that the plaintiff was "too old to be working." No similar comments are attributed to Brown. Without doubt, inquiring why someone is working at her age (as in this case) is radically different than stating "I need someone younger" and that an employee was "too old to be working" as in *Mora.*

Rather, the comments in this case are more similar to those set forth in *Austin v. Wal-Mart Stores, Inc.*, Civil Action File No. 1:10-cv-3556-TWT, 2012 WL 6194233 at *3, (N.D. Ga. Dec. 11, 2012), which specifically distinguished the *Mora* case. In *Austin*, the plaintiff alleged that after she stated that she wanted to work for Wal-Mart for life, she was told that "family and other things in life are more important than employment at Wal-Mart." *Id.* at *2. She also alleged that,

11

when she was terminated, she was told that her termination was "a blessing in disguise" because, "as we get older we shouldn't have to work so hard." *Id.*.

In distinguishing *Mora*, the Court in *Austin* concluded that the statements alleged by the plaintiff in *Austin* "can be characterized as polite conversation, do not reference the Plaintiff's capability, and only once connect Plaintiff's age with her employment. The statements made to the Plaintiff surrounding her termination do not raise an issue of fact that her age was the sole cause of her termination." *Id.* at 3. Similarly, the statements attributed to Brown that reference Plaintiff's age can likewise be labeled as polite conversation about stressors facing Plaintiff, particularly Plaintiff's need to tend to her ailing husband. Indeed, the statement about Brown "think[ing]" that Plaintiff would want to be home with her husband is very similar to the statement in *Austin* about there being "other things in life [that] are more important than employment at Wal-Mart."[4] *See also, Darity v. Mega Life & Health Insurance Company*, 541 F. Supp.2d 1360 1373 (N.D. Ga. 2008) (Duffey, J.) (finding that allegedly discriminatory comments made prior to and outside of the decision are insufficient to establish pretext).

---

[4] No doubt, the comments attributed to Brown that Plaintiff was not capable of mentally understanding her cannot be considered polite conversation. However, this comment was a statement about Plaintiff's mental acumen and is never tied to her age or disability. Accordingly, while a demeaning comment, it is not evidence of age or disability discrimination.

12

Moreover, mitigating against any inference of age discrimination raised by these comments is the uncontroverted testimony by older workers such as David Wells who testified that he had a "good working relationship" with Brown before he missed a deadline and went on vacation without notifying Brown (Facts, ¶ 208) and the testimony of Jimmy "Neal" Reed, another Buyer who was even older than Plaintiff, who testified about Brown:

> **She treated everyone the same. It didn't make a difference who you were. If you didn't do what she wanted you to do, you got criticized.**

(Facts, ¶¶ 197, 200).

Plaintiff's final argument to try to establish pretext (which only applies to her retaliation claim) is her contention that Brown's May 9, 2011 memorandum "recommending" termination provides sufficient evidence of pretext. As noted above, this memorandum was not acted upon or shared with anyone. After it was created, Plaintiff was provided additional warnings about her performance and her employment was only terminated after she continued to make purchase order errors and only after her second 90 day PIP expired.

## III. Plaintiff's Claim Under The ADA Cannot Survive Summary Judgment.

### A. Plaintiff Cannot Establish That She Is Disabled.

Here, Plaintiff's doctor noted that Plaintiff needs to not stay sedentary for more than an hour due to her arthritis. (Facts, ¶ 97). This does not substantially limit her ability to perform a major life activity as compared to most people in the general population. As noted in Defendant's Memorandum, while the term "substantially limits" "is not meant to be an exacting standard" and "shall be construed broadly in favor of expansive coverage," "not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(1)(i) and (ii).

In her brief, Plaintiff focuses on her inability to sit for more than an hour. Even under a broad construction of the term required by the new regulations, simply needing to stand up every hour does not "substantially limit" her ability to sit as compared to the general population. No doubt, most individuals need to rise up every hour or so. In fact, OSHA suggests that all employees stand up and move around periodically.

https://www.osha.gov/SLTC/etools/computerworkstations/positions.html.

### B. Even If Plaintiff Was Disabled, She Cannot Show That Defendant Discriminated Against Her By Failing To Provide Her With A Reasonable Accommodation.

Even if Plaintiff could show that she was disabled as that term is defined by the ADA, she cannot show that Defendant failed to provide her with a reasonable accommodation. The point Defendant raises about Plaintiff remaining in the room

14

during a multiple hour deposition is not to suggest that Plaintiff does not have a need to stand and move around every hour. The point is that this "accommodation" can be accomplished in a space smaller that the Purchasing Department and, thus, that Plaintiff cannot establish that Defendant failed to reasonably accommodate her based on her contention that Brown told her that she needed to "stay visible within the department." (Pl. Dep. 86). Moreover, despite Plaintiff's argument to the contrary, she conceded that Brown never told her "you can't get up" (Pl. Dep. 82) and never refused her permission to use the restroom. (Pl. Dep. 84, 98). Importantly, Plaintiff admits that she was never "written up" for taking a walk without Brown's permission. (Pl. Dep. 88).

Quite simply, despite Plaintiff's meandering testimony on the issue, the facts establish that, upon presenting the doctor's note to Brown, Brown's directive was to stay visible in the Department and that the Department has sufficient room for Plaintiff to move around as mandated by her doctor. Even if, as Plaintiff appears to contend, Brown required Plaintiff to seek permission before she left her seat, she admits that Brown never refused permission and, thus, did not interfere with her needed accommodation. Consequently, even under Plaintiff's tortured version of the facts, she was provided with her requested accommodation.

## CERTIFICATION OF COMPLIANCE WITH L.R. 5.1

Pursuant to L.R. 7.1D, N.D. Ga., the undersigned counsel hereby certifies that the foregoing pleading was prepared with one of the font and point selections approved by the court in L.R. 5.1C, N.D. Ga., specifically Times New Roman 14 point font.

Respectfully submitted,

**GREGORY, DOYLE, CALHOUN
& ROGERS, LLC**
*Attorneys for Defendant*

*s/Charles L. Bachman, Jr*
Charles L. Bachman, Jr.
Georgia Bar No. 030545
Lauren A. Nations
Georgia Bar No. 301299
cbachman@gregorydoylefirm.com
lnations@gregorydoylefirm.com

49 Atlanta Street
Marietta, GA 30060
770-422-1776 (telephone)
770-426-6155 (facsimile)

Date:  September 9, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARY GODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No: |
| | ) | 1:12-cv-3752-WSD |
| | ) | |
| v. | ) | |
| | ) | |
| WELLSTAR HEALTH SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2013, Defendant filed Defendant's Reply Brief in Support of Its Motion for Summary Judgment using the CM/ECF system, which will automatically send e-mail notification to all counsel of record:

Edward D. Buckley, Esq.
Justin M. Scott, Esq.
Buckley & Klein, LLP
Promenade II, Suite 900
1230 Peachtree Street, NE
Atlanta, GA  30309

**GREGORY, DOYLE, CALHOUN
& ROGERS, LLC**
*Attorneys for Defendant*

*s/Charles L. Bachman., Jr.*