IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY GODWIN,

                    Plaintiff,

          v.                                        1:12-cv-3752-WSD

WELLSTAR HEALTH SYSTEMS,
INC.,

                    Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Mary Godwin's ("Plaintiff")

Motion *in Limine* [70] ("Plaintiff's Motion") and Defendant Wellstar Health

Systems, Inc.'s ("Defendant") (together with Plaintiff, the "Parties") Motion *in*

*Limine* [71] ("Defendant's Motion").

## I.    BACKGROUND[1]

On October 26, 2012, Plaintiff filed this employment discrimination action

against Defendant, her former employer.  The only claim that is to be tried is

---

[1]     The factual background of this case is laid out extensively in the Court's
Order on Defendant's Motion for Summary Judgment, (March 27, 2014, Order
[48]) and in the Eleventh Circuit's Opinion on appeal, (June 17, 2015, Opinion
[60]).  The Court here discusses only the background relevant to the pending
motions.

Plaintiff's claim under the Age Discrimination in Employment Act ("ADEA").
Trial is set for February 29, 2016.  (November 12, 2015, Order).

On September 28, 2015, the Parties filed their respective motions *in limine*.
Plaintiff moves *in limine*:  (1) to prohibit Defendant from making any statements,
directly or indirectly, relating to the claims dismissed at the summary judgment
stage of this action; and (2) to strike Linda Durham, Paula Arnett, and Phil Phillips
from Defendant's trial witness list under Fed. R. Civ. P. 37(c), because Defendant
failed to timely disclose these individuals as people having knowledge of
information relating to the issues in this case.

Defendant moves *in limine* to exclude: (1) e-mails and awards praising
Plaintiff on the ground that the e-mails and awards are hearsay, irrelevant, and
more prejudicial than probative; (2) "me too" evidence that other current or former
employees believed that Cherise Brown ("Brown"), the alleged discriminator in the
case, also discriminated against them because of their age; (3) evidence or
argument regarding claims that have been dismissed by the Court; (4) evidence
that Plaintiff suffered emotional injury, pain and suffering, or mental anguish as a
result of Defendant's alleged conduct; and (5) stray remarks allegedly made by
Brown that she wanted to put some people "out to pasture."

2

## II.   DISCUSSION

### A.   <u>Plaintiff's Motion</u>

#### 1.   *Claims Dismissed on Summary Judgment*

Plaintiff seeks to prohibit Defendant from making statements relating to the claims dismissed on summary judgment.  She argues that "[a]llowing such statements could cause the jury to infer that, having lost all of her claims but one, her remaining age discrimination claim is questionable."  (Pl.'s Mot. at 3).  She argues these statements should be excluded as irrelevant and inadmissible under Rules 401 and 402 of the Federal Rules of Evidence, and that, even if the Court finds the statements are relevant, they should be excluded as prejudicial under Rule 403.  Defendant does not object to the motion to preclude references to dismissed claims, and the motion is granted on this ground.  <u>See</u> <u>McGinnis v. Am. Home Mortg. Servicing, Inc.</u>, 5:11-cv-284 (CAR) 2013 WL 3964916, at *2 (M.D. Ga. July 31, 2013) (granting motion *in limine* "to the extent that such evidence is proffered in support of . . . dismissed claims").

#### 2.   *Untimely Disclosure of Trial Witnesses*

 Plaintiff seeks to exclude witnesses and documents she claims Defendant did not timely disclose or produce during discovery.  Plaintiff claims that Linda

Durham, Paula Arnett, and Phil Phillips (together, the "Witnesses"), whom Defendant identifies as trial witnesses, were not disclosed in Defendant's Initial or Amended Disclosures.  (Pl.'s Mot. at 6).  Plaintiff also claims that the Witnesses were not identified in response to Plaintiff's Interrogatory No. 5.  Plaintiff seeks to preclude their testimony at trial.

Federal Rule of Civil Procedure 37 provides:  "if a party fails to provide information or identify a witness as required by Rule 26(a) and (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."  Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009) (citing Leathers v. Pfizer, Inc., 233 F.R.D. 687, 697 (N.D. Ga. 2006)).  In determining whether a witness is properly excluded based on a failure to disclose, the Eleventh Circuit considers:  "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify."  Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc., 389 F.3d 1339, 1353 (11th Cir. 2004).

4

Defendant admits that it was required to identify the Witnesses in its Initial Disclosures or Discovery Responses, but claims the failure to disclose was harmless. (Def.'s Resp. [72] at 2-3). Defendant argues that the Witnesses were repeatedly referenced in documents produced by both Parties, and these documents are intended to be used by the parties at trial. (Id. at 3). Defendant notes that the Witnesses were referenced at depositions, including by Plaintiff's counsel, and the documents and deposition testimony show Plaintiff knew that the Witnesses had relevant information about the case. (See id. at 3-4). Defendant notes also that Plaintiff identified Ms. Arnett and Ms. Durham as comparators. Finally, Defendant argues Plaintiff has identified three "may call" witnesses she did not previously disclose. (Id. at 7).[2]

Defendant has failed to meet its burden to show its failure to disclose was harmless. Document production and deposition testimony show, at most, that Plaintiff was aware of the Witnesses. The rules requiring disclosure—which require identification and information about them—exist to avoid forcing parties into guessing games, and so the parties have the opportunity to conduct meaningful

---

[2]   To the extent Plaintiff failed to disclose and identify witnesses, the analysis in this section of the Order also applies.

discovery, including by deposing potential witnesses.  See Nance v. Ricoh
Electronics, Inc., 1:06-cv-2396-RWS, 2008 WL 926662, at *3 (N.D. Ga. Apr. 4,
2008) (finding that a plaintiff's non-compliance with Rule 26(a) was not harmless
because defendant did not have the opportunity to depose the witnesses); see also
Ross v. Corp. of Mercer Univ., 506 F. Supp. 2d 1325, 1344 (M.D. Ga. 2007)
(holding that party's failure to identify witnesses during discovery not harmless
because opposing party "has not had the chance to refute the alleged facts" attested
to by those witnesses).[3]  A party's identification of a person as knowledgeable
about the facts in a case has unique import, allowing the parties to focus on those
an opposing party and their counsel specifically identify in initial disclosures and
interrogatories.  Failure to identify people with facts about a case results in
procedural and legal prejudice.  This prejudice is made particularly apparent by
Defendant's failure to update its response to Plaintiff's Interrogatory No. 5, which
required identification of and specification about those knowledgeable about the

---

[3]     Defendant's argument that its failure is harmless because "there is no reason
to believe that Plaintiff would have deposed" the Witnesses, (Def.'s Resp. at 7), is
unavailing.  Plaintiff very well may have deposed the Witnesses had they been
timely disclosed by Defendant and had Defendant responded to Plaintiff's
Interrogatory No. 5, informing Plaintiff of the knowledge the Witnesses possessed.

facts in the case.  (Pl.'s Mot., Ex. A).[4]  Plaintiff's motion to exclude Linda

Durham, Paula Arnett, and Phil Phillips from presenting testimony at trial is

granted.[5]

    B.    <u>Defendant's Motion</u>

        1.    *E-Mails or Awards Praising Plaintiff*

Defendant moves to exclude any e-mails or awards "praising" Plaintiff (the

"E-mails and Awards").  (Def.'s Mot. at 2-3).  Defendant argues the E-mails and

Awards are inadmissible as hearsay, and, even if they are not, they are irrelevant

because there is no evidence the relevant decisionmakers were aware of the

---

[4]    Defendant concedes the Witnesses will "provide testimony similar to . . . disclosed witnesses."  (Def.'s Resp. at 2).  Defendant has disclosed sixteen witnesses.  The Witnesses' testimony therefore does not appear to be critical, and likely will be cumulative.  This weighs in favor of exclusion.  <u>See</u> <u>Bearint</u>, 389 F.3d at 1353 (holding that the importance of the testimony is one factor to consider in finding a failure to disclose justified or harmless); <u>see also</u> <u>Roberts v. Scott Fetzer Co.</u>, No. 4:07-cv-80 (CDL), 2010 WL 3546499, at *9 (M.D. Ga. Sept. 7, 2010) (excluding testimony where importance of witness was outweighed by lack of justification for failure to disclose and the resulting harm to plaintiff).

[5]    Plaintiff also seeks to exclude the personnel files for the Witnesses.  The files were produced because Document Request No. 12 required the production of all personnel documents of employees identified as witnesses in the pretrial order. (Def.'s Resp. at 8-9).  It is unclear whether the personnel files were required to be produced pursuant to a request for the production of documents served during discovery.  Ultimately, the Court does not know if these personnel records will be introduced at trial now that the Witnesses are excluded.  If the records are introduced, Plaintiff may object to their admission

E-Mails and Awards, and the information in the E-mails or the fact of an Award is unrelated to the reasons Plaintiff was terminated.  (Id. at 6).

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"  United States v. Perl, 492 F. App'x 37, 40 (11th Cir. 2012) (quoting Fed. R. Evid. 801(c)).  The E-Mails and Awards are hearsay, and do not fall under any exception.[6]  Plaintiff claims that the E-Mails and Awards are not being offered to prove the truth of the matter asserted, but argues they should be "allowed to . . . rebut Defendant's defenses."  (Pl.'s Resp. at 4).  If offered to rebut Defendant's defenses, they necessarily are offered for the truth of the matter they assert.  Plaintiff apparently seeks to introduce the E-Mails and Awards to show Plaintiff's "good performance," to contradict Defendant's criticism of her

---

[6]    Plaintiff claims that "[s]everal of the e-mails are admissions of an opponent," and therefore fall under a hearsay exception.  (Pl.'s Resp. at 3). Plaintiff, however, only identifies a single document as falling under the opponent admission exception.  Defendant states this document was mistakenly included in Defendant's exhibit of documents to exclude, and that Defendant does not move to exclude this document.  (Def.'s Reply [74] at 2 n.1).

performance.  Considering the reason Plaintiff appears to introduce the E-mails and Awards, the Court finds they are hearsay and thus are required to be excluded.[7]

Plaintiff identifies three E-Mails, Plaintiff's Exhibits 12, 25 and 27, she seeks to introduce.  These e-mails identify relevant decisionmakers as addressees or copy addressees.  Plaintiff argues these documents are not hearsay because trial witnesses can lay an evidentiary foundation for admission.

The Court has reviewed these three e-mails, assuming Plaintiff could provide a sufficient authentication of these documents and could overcome their exclusion under Rule 803 of the Federal Rules of Evidence.  Exhibit 12 is a 2010 e-mail from Katherine Hodges to Plaintiff, copying Brown.  In it, Hodges thanks Plaintiff "for taking the initiative today to get that price change done for me." (Def.'s Mot., Ex. A at 3).  The "initiative" appears to be providing specific price change information to the e-mail author, and in doing so helped provide the information requested, even though that task was the responsibility of some other employee.  Defendant's legitimate, non-discriminatory reason for Plaintiff's termination is that Plaintiff continuously made errors in purchase orders.

---

[7]      It is possible the Emails and Awards may rebut other evidence introduced at trial.  If Plaintiff believes trial evidence allows this evidence, she may request, out of the presence of the jury, the Court to consider their admission.

Exhibit 12 is unrelated to Defendant's legitimate, non-discriminatory reason for Plaintiff's termination, and that she helped on a discrete unrelated task is irrelevant to the issues to be tried.

Exhibit 25 is a 2011 e-mail from Plaintiff to Gail Sikora, and Sikora's reply to Plaintiff which also includes Brown and two other individuals as recipients. In it, Sikora states "Thank you all for your efforts in this . . . We work hard to manage our inventory and not to have emergency requests for PO's." (Def.'s Mot., Ex. A at 20). The "effort" mentioned in the e-mail is unspecified, but appears to be isolated to some discrete requests for information to which Plaintiff promptly responded. This e-mail refers to a discrete task on a special request for some information necessitated by Defendant's use of a new system. While the "PO" reference presumably refers to purchase orders, it appears to show Sikora handling the purchase orders, not Plaintiff. Exhibit 25 is not relevant to the issues in this case, including to rebut the grounds for Plaintiff's termination.

Exhibit 27 is a 2011 e-mail conversation involving Plaintiff and Laura Chollet, among others. (Def.'s Mot., Ex. A at 24-26). In it, Chollet tells Brown and others that she "acknowledge[s] the outstanding service we received from Mary Godwin yesterday . . . regarding a last minute request for vendor approval."

10

(<u>Id.</u>).  This e-mail references Plaintiff's effort to provide some information to a potential vendor.  This e-mail does not sufficiently relate, if it does at all, to Plaintiff's performance with respect to purchase orders.

The three e-mails, over a three-year period of time, do not relate to the conduct for which Plaintiff was allegedly discharged and do not otherwise rebut the legitimate, non-discriminatory reasons upon which Defendant took its employment action that is the basis of this case.  The e-mails, thus, are not, under Federal Rule of Evidence 401, relevant to the issues to be tried.[8]  Defendant's Motion to exclude the E-mails and Awards is granted.[9]

        2.     *"Me Too" Evidence and Cherise Brown's "Out to Pasture" Comment*

        a.     "Me Too" Evidence

Defendant next seeks to exclude evidence that other employees of Defendant believe that Brown discriminated against them because of age ("me too" evidence), including the testimony of David Wells, a former employee of Defendant.

---

[8]    Even if the E-mails and Awards were relevant, their probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or the possibility of misleading the jury.  Fed. R. Evid. 403.

[9]    The Court's ruling extends to those documents identified in the table on page 5 of Defendant's Motion.

Defendant concedes the Eleventh Circuit has upheld the admission of "me too" evidence in other cases, under the facts in those actions. Defendant argues courts regularly prohibit "me too" evidence from employees who claim they also were discriminated against, because such evidence is highly prejudicial and only slightly relevant. (Def.'s Mot. at 10 (citing cases)). Defendant argues that "me too" evidence in this case would confuse issues for the jury because Defendant would be forced to engage in mini-trials with respect to other employees' alleged claims.

"The Supreme Court has held that wide evidentiary latitude must be granted to those attempting to prove discriminatory intent and that 'the trier of fact should consider all the evidence.'" Demers v. Adams Homes of Nw Fla., Inc., 321 F. App'x 847, 853 (11th Cir. 2009) (citing U.S. Postal Serv. v. Aikens, 460 U.S. 711, 714 n.3 (1983)). In Demers, the Eleventh Circuit acknowledged its prior decisions approving the use of "me too" evidence in discrimination cases, particularly where the evidence is used to demonstrate the discriminatory intent of a common decisionmaker. Id. at 854 (citing Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1268 (11th Cir. 2008)). "Even when 'me too' evidence is relevant under Rule 401, the district court retains the discretion to exclude that evidence, under

12

Rule 403, if it is unduly prejudicial, confusing, misleading, or cumulative."  Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1258 (11th Cir. 2014).

The witness testimony and evidence Defendant seeks to exclude are offered by Plaintiff to show discriminatory animus by Brown, the person who recommended Plaintiff's termination.  (See Pl.'s Resp. at 7).  Some of the evidence, however, consists of witnesses' statements of their belief that they too suffered discrimination.  The admission of this kind of speculative evidence would effectively require a mini-trial to litigate whether the witnesses were, in fact, "discriminated" against.  Litigation to determine whether discrimination occurred would be unduly prejudicial, confusing or misleading to the jury, and of limited probative value regarding whether *plaintiff* suffered discrimination.

In King v. Volunteers of Am., N. Ala., Inc., 614 F. App'x 449, 455-56 (11th Cir. 2015), the Eleventh Circuit upheld a district court's decision to permit witness testimony that a decisionmaker asked the witness to write a false statement about plaintiff, and to exclude testimony of the witness's own discrimination lawsuit against the employer.  The Court finds this approach instructive because it distinguishes between factual information that may be probative of a defendant's reason for an employment decision from a witness's belief of the effect of such

13

conduct on the witness.  This distinction is sound.  Accordingly, Plaintiff is excluded from introducing testimony about a witness's views and beliefs regarding the reasons for the witness's own termination.  Plaintiff is permitted to introduce concrete "me too" evidence to the extent it shows Brown's conduct toward or comments directed at others provided Plaintiff can establish such conduct or comments is evidence of alleged discriminatory animus.  The "out to pasture" comment discussed below is an example of the type of testimony permitted.

### b.  "Out to Pasture" Comment

Defendant seeks to exclude evidence that Brown allegedly told Wells that some people are going to be put "out to pasture."  (Def.'s Mot. at 14).  Mr. Wells testified as follows:

> A:    [...] [Brown] made a comment to the extent of some people are
> going to be put out of the pasture.  And I thought, wow, okay.
> Q:    Who did you understand she made the put-out-to-pasture
> comment about?
> A:    I think it had—from my perspective, it had to do with those of
> us, the older individuals, that really didn't have the computer savvy or
> the computer skills to do the things she wanted done from a computer
> standpoint.
> Q:    Was Mr. Reed included in that?
> A:    Absolutely.
> Q:    Was Ms. Godwin?
> A.    Yes.

(Wells Dep. [36] at 58:10-59:1).

14

Defendant claims that the comment is not relevant to the issues in this lawsuit because it is a stray comment, and that, "even under Wells's interpretation, the comment was not intended to indicate an animus against all older individuals— just those without computer skills.  As such, it is not indicat[ive] of age discrimination, but rather discrimination against those without the necessary computer skills needed for the job."  (Id. at 15).  Plaintiff notes Wells also attributed the following statements to Brown and her animus to older workers: "It's a shame we've got so many people in our department deficient in their ability to work on computers," (Wells Dep. at 79); "I want people who can hit the ground running," (id. at 96-97); and "At your age, I would think that you know how to do this," (id. at 98).

The "out to pasture" comment could be construed as evidencing discriminatory animus against older workers or, as Defendant contends, animus against those without computer skills—a skill that may be associated with older people.  A jury is required to make that determination.  The Court denies Defendant's Motion to exclude evidence that Brown stated some people are going to be put "out to pasture."

15

3.   *Claims Dismissed on Summary Judgment*

Defendant moves to exclude evidence (1) that Brown, on two occasions, manufactured fictitious WellStar forms to recommend Plaintiff's termination; and (2) that when Trupiano approved Brown's recommendation to terminate Plaintiff, he was aware Plaintiff previously had complained to HR about age discrimination, and that HR was investigating Plaintiff's age discrimination complaint against Brown.  Plaintiff argues that the evidence Defendant seeks to exclude "should not be excluded merely because it also supported Plaintiff's dismissed claims."  (Pl.'s Resp. [73] at 9). [10]

Rule 401 provides that evidence is relevant if "it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Federal Rule of Evidence 402 bars the admission of irrelevant evidence.  Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

---

[10]   To the extent Plaintiff moved to exclude evidence of Plaintiff's dismissed claims, her motion did not apply to evidence that is relevant to Plaintiff's age discrimination claim.

time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts

have excluded evidence of dismissed claims when a case is tried on the remaining

claims. See, e.g., Andazola v. Logan's Roadhouse, Inc., No. CV-10-S-316-NW,

2013 WL 1834308, at*8 (N.D. ala. Apr. 29, 2013); McGinnis, 2013 WL 3964916,

at *1-2.

   The evidence Defendant seeks to exclude could be relevant to Plaintiff's age

discrimination claim. Defendant argues that Alverio v. Sam's Warehouse Club,

Inc., 253 F.3d 933, 943 (7th Cir. 2001) supports that allowing retaliation evidence

would confuse the jury and thus should be excluded. (Def.'s Mot. at 13). The

retaliation at issue in Alverio, however, was "based on a different set of . . . facts"

that were unrelated to the remaining sexual harassment claim. Here, Brown's

fabrication of disciplinary forms recommending Plaintiff's termination may be

evidence of Brown's intent in seeking to terminate Plaintiff, and that Trupiano

knew at the time he approved Brown's recommendation that Plaintiff had

complained to HR about age discrimination may be relevant to whether Brown's

discriminatory animus, if there was one, is imputed to Trupiano. Defendant's

motion is denied on this ground. See McGinnis, 2013 WL 3964916, at *2

(denying motion *in limine* to exclude evidence that supported dismissed claims

17

because the evidence could also support remaining claim and was more probative than prejudicial)

> 4.   *Emotional Damages*

Defendant seeks to exclude evidence regarding Plaintiff's emotional damages in this case.  The Parties agree that Plaintiff is not entitled to emotional distress damages under the ADEA.  Plaintiff claims that "evidence of events that caused her emotional injury and mental anguish will not be used to establish non-recoverable compensatory damages, but rather will be used to support her credibility and economic damages which she is entitled to under the ADEA." (Pl.'s Resp. at 12).  Evidence that Plaintiff suffered from depression and that she lost her home as a result of termination, however, bolster sympathy for her rather than her credibility.  Plaintiff's emotional injury, pain and suffering or mental anguish is irrelevant to any recoverable damages, and, even if it were relevant— which it is not—it is required to be excluded as more prejudicial than probative and confusing and misleading to the jury.  Fed. R. Evid. 401, 403.

Plaintiff also states that she intends to show evidence that, when she was terminated, she was no longer able to purchase life insurance for her husband.  As a result, she lost her life insurance benefits when he passed away after her

termination.  (Pl.'s Resp. at 12).  The proceeds of her husband's life insurance

policy are not recoverable under the ADEA.  To the extent loss of insurance

coverage is a basis for damages, the measure of damages is the amount paid in

premiums on Plaintiff's behalf, or the amount paid to obtain comparable insurance.

See Fariss v. Lynchburg Foundry, 769 F.2d 958, 965 (4th Cir. 1985) (in ADEA

case, holding that "insurance coverage, not the proceeds, is the benefit for which

the employer must be held liable"); EEOC v. Dial Corp., 469 F.3d 735, 744 (8th

Cir. 2006) (in Title VII case, holding the same).  The Court excludes evidence of

insurance proceeds upon Plaintiff's husband's death as irrelevant under Rule 401.

The Court finds that, even if relevant, this evidence is substantially prejudicial and

would be misleading to the jury.  Fed. R. Evid. 403.[11]

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Mary Godwin's Motion *in*

*Limine* [70] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Motion

is **GRANTED**, and Defendant is precluded from making any statements relating to

---

[11]     The Court cautions Plaintiff not to present evidence that she had coverage on her husband, lost coverage on her husband and that her husband died.  That Plaintiff's husband is deceased is unlikely to be relevant to this action.

the claims dismissed at the summary judgment stage of this action.  Defendant also is precluded from presenting Linda Durham, Paula Arnett, and Phil Phillips as trial witnesses.  Plaintiff's Motion is **DENIED** regarding Linda Durham, Paula Arnett, and Phil Phillips's personnel documents, subject to Plaintiff's objection to admission of the documents if Defendant seeks to introduce them at trial.

**IT IS FURTHER ORDERED** that Defendant Wellstar Health Systems, Inc.'s Motion *in Limine* [71] is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED**, and Plaintiff is precluded from presenting: (1) the E-mails and Awards; (2) evidence that Plaintiff suffered emotional injury, pain and suffering, or mental anguish as a result of Defendant's alleged conduct; and (3) evidence that insurance proceeds were not available under a policy on Plaintiff's spouse's life.  With respect to Defendant's Motion to exclude "me too evidence," Defendant's Motion is **GRANTED** to the extent Plaintiff seeks to introduce testimony about a witness's views and beliefs regarding the reasons for the witness's own termination.  Defendant's Motion is **DENIED** to the extent Plaintiff seeks to introduce specific "me too" evidence and testimony that may show Brown's discriminatory animus.  With respect to Defendant's Motion to exclude evidence of Brown's alleged fabrication of disciplinary forms and that

20

Trupiano knew of Plaintiff's age discrimination complaints to HR, Defendant's motion is **DENIED**.  To the extent Defendant seeks to exclude evidence of claims dismissed on Defendant's motion for summary judgment, Defendant's motion is **GRANTED**.

**SO ORDERED** this 18th day of November, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE