## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MARY GODWIN,

                  **Plaintiff,**

    **v.**

WELLSTAR HEALTH SYSTEMS,
INC.,

                  **Defendant.**

**1:12-cv-3752-WSD**

### OPINION AND ORDER

This matter is before the Court on Defendant Wellstar Health Systems, Inc.'s ("Defendant") Motion for Judgment as a Matter of Law [134] and Motion for New Trial [135] (together, the "Motions"). Also before the Court is Plaintiff Mary Godwin's ("Plaintiff") Motion for Equitable Relief [123], seeking an award of prejudgment interest and front pay.

## I.     BACKGROUND

On October 26, 2012, Plaintiff filed this employment discrimination action against Defendant, her former employer, alleging Defendant terminated her employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"). A trial was held from February 29, 2016, through March 4, 2016. On March 4, 2016, a jury returned a verdict in Plaintiff's favor.

Specifically, the jury found that Plaintiff's supervisor, Cherise Brown, recommended Plaintiff's termination because of Plaintiff's age, and that Ms. Brown's recommendation was the but-for cause of, or the determinative influence on, Mr. Trupiano's termination decision.  The jury found that Defendant's violation of the ADEA was willful, entitling Plaintiff to liquidated damages.

    A.    <u>Evidence Pertaining to Ms. Brown</u>

At trial, Plaintiff testified that Ms. Brown made the following comments to her:

- "You're not mentally capable of understanding."  (Trial Tr. [126]-[130] ("Tr.") 442, 449-450, 592, 616-617);

- "Some people are going to be put out in the pasture."  (Tr. 343, 737);

- "You should have made provision for being out of work when you were young."  (Tr. 592, 643, 773);

- "You should be at home with your husband."  (Tr. 592, 643);

- "Why are you relying on [Defendant] for your insurance."  (Tr. 643);

- "Obviously just can't understand what I am saying."  (Tr. 643).

Ms. Brown testified that she made the following comments to Plaintiff:

- "How old are you?"  (Tr. 206, 440);

- "At your age, why are you still working?"  (Tr. 206, 441, 592, 770-771);

- "You are past retirement age, why are you still working?"  (Tr. 206, 441, 491, 592, 643, 770-771);

- "At your age, I would think you would want to be home taking care of your husband."  (Tr. 441-42, 454, 592, 643).

Other employees testified that Ms. Brown made the following comments to or about older workers:

- "At this day and age, I don't think there were many computer savvy people in the Purchasing department."  (Tr. 431-343);

- "I don't believe you have the capability to use Excel."  (Tr. 342);

- "People who do not have the computer skills are going to be put out of the pasture."  (Tr. 343:4-10);

- "I want people who can hit the ground running."  (Tr. 347);

- Ms. Brown referred to older workers as "legacy employees."  (Tr. 538, 563).

Ms. Brown also told David Wells, a former employee of Defendant, that she was "going to be all over [Plaintiff]."  (Tr. 341).

The following evidence and testimony was presented at trial with respect to Ms. Brown's general treatment of Plaintiff:

- Ms. Brown spoke harshly to Plaintiff.  (Tr. 538-39);

- Ms. Brown refused to coach or counsel Plaintiff on her performance improvement plans.  (Tr. 597-98, 600, 615-16);

- Ms. Brown did not provide Plaintiff with any training on how to conduct an RFP, but criticized Plaintiff's performance for failing to properly prepare an RFP.  (Tr. 326-27, 486, 506);

- In recommending Plaintiff's termination, Ms. Brown created two non-standard performance summaries for Plaintiff with a superimposed WellStar logo.  (Tr. 207-208, 460-61, Ex. J32, P32);

- Lynn Bryant testified Ms. Brown told her she was no longer allowed to help Plaintiff, despite that helping Plaintiff and other buyers was part of Ms. Bryant's job as systems specialist.  (Tr. 540-41);

- Ms. Brown spent more time with younger employees.  (Tr. 348-49).

B.    Evidence of Plaintiff's Job Performance

From April 2008 through Plaintiff's termination in June 2011, Plaintiff's supervisors criticized her for making too many errors on her purchase orders.  (Tr. 677-97; Def.'s Exs. 1-4; Jt. Ex. 10).  During trial, four witnesses—Mr. Trupiano, Ms. Brown, Mr. Tifft, and Ms. Bryant—identified errors in Plaintiff's purchase orders.  (See [134.1] at 9-10).  Plaintiff testified that these errors were due to Ms. Brown prematurely printing out Plaintiff's purchase orders, (Tr. 578), and that, from Plaintiff's perspective, it was more important to order the item than to ensure all details of the order were correct, (Tr. 578-80, 628).  Mr. Trupiano testified that Plaintiff's perspective was incorrect.  (Tr. 498).

Ms. Bryant testified that Plaintiff's performance was not worse than any other buyer.  (Tr. 564).  Plaintiff's previous manager, Ken Tifft, testified that

4

Plaintiff's performance was good before Ms. Brown took over.  (Tr. 755, 775, Joint Ex. 10, 12).  Mr. Tifft testified he never disciplined Plaintiff or considered terminating her.  (Tr. 759).  He approved two raises for Plaintiff.  (Tr. 366-67, 487, 590, Jt. Ex. 12).  Plaintiff's performance reviews prior to Ms. Brown showed she met or exceeded Defendant's expectations.  (Tr. 358-63, 364-65, 367-68, Jt. Exs. 1-5).  Several witnesses, including Ms. Brown and Mr. Trupiano, testified that all buyers make errors.  (Tr. 160-61, 340, 499, 548).  Defendant did not track the amount of errors any buyer made, (Tr. 765), and Ms. Brown did not know, from month to month, whether Plaintiff's errors were more or less than other buyers. (Tr. 175-76).

   C.   Evidence Regarding Mr. Trupiano's Termination Decision

Mr. Trupiano testified as follows:

Q.  Now, Mr. Trupiano, I am going to ask you a "but for" question.  If Cherise Brown had not come to you and recommended [Plaintiff]'s termination, would you have approved her termination or would you have terminated her on your own?

A.  I would not have had the knowledge to terminate her on my own.

(Tr. 503).

Mr. Trupiano testified that he was informed of Plaintiff's purchase order errors by Chris Holihan, Mr. Tifft, and internal customer complaints.  (Tr. 485, 504, 510-11).  He was aware Plaintiff had been placed on two performance

improvement plans.  (Tr. 503).  Mr. Trupiano attended the June 3, 2011, counseling session with Plaintiff and Ms. Brown, during which Plaintiff's purchase order errors were discussed.  (Tr. 723-24).  He also noted that Plaintiff's purchase orders had "very serious errors and very numerous errors."  (Tr. 518). Mr. Trupiano testified that he asked to review Plaintiff's purchase orders, and, based on his experience, he was "very concerned about the very large number of [errors] because . . . we [could] have an internal audit that would reveal these sorts of errors and that would be reported to the board of directors."  (Tr. 517).

Mr. Trupiano was, prior to terminating Plaintiff, aware Ms. Brown asked Plaintiff about her age and that Ms. Brown suggested that Plaintiff should retire. (Tr. 491).  Mr. Tifft expressed to Mr. Trupiano his concern about Ms. Brown's comments.  (Tr. 491).  He testified that "obviously we informed [Ms. Brown] that she could not make those sorts of comments."  (Tr. 492).  Mr. Trupiano also was aware that the human resources department investigated Plaintiff's complaint that Ms. Brown was mistreating her because of her age.  (Tr. 491).  He testified that he relied on the human resources department to perform an investigation.  (Tr. 491-92).  Mr. Trupiano did not discuss Plaintiff's age discrimination complaint with Ms. Brown after Ms. Brown recommended he terminate Plaintiff.  (Tr. 493, 500).

Mr. Trupiano testified that his knowledge regarding Plaintiff's performance was confined to purchase orders given to him by Ms. Brown.  (Tr. 493, 496).  He did not conduct an independent investigation to find out whether Plaintiff had more or fewer errors than her fellow buyers.  (Tr. 500).  He did not know that Plaintiff handled a higher volume of purchase orders than most of the other purchasers.  (Tr. 500).  He did not know whether the reports provided to him by Ms. Brown were complete.  (Tr. 502).  He did not know if Plaintiff was disciplined or placed on a performance improvement plan before Ms. Brown became Plaintiff's supervisor. (Tr. 486-87).

    D.   <u>Defendant's Motions</u>

On April 4, 2016, Defendant filed its Motions.  In its Motion for Judgment as a Matter of Law, Defendant argues that Plaintiff did not present legally sufficient evidence for a reasonable jury to find Defendant engaged in age discrimination when it terminated Plaintiff, including because (1) Plaintiff did not show that Ms. Brown treated her differently because of her age, (2) Ms. Brown recommended Plaintiff's termination for legitimate, non-discriminatory reasons, and (3) even if Ms. Brown recommended Plaintiff's termination because of her age, the recommendation was not the determinative influence on Mr. Trupiano's termination decision.  In its Motion for New Trial, Defendant argues (1) the jury

verdict is contrary to the great weight of the evidence, (2) liquidated damages

should be set aside because Plaintiff offered insufficient evidence to prove a willful

violation of the ADEA, (3) and improper evidence was introduced at trial.

## II.   LEGAL STANDARDS

### A.   Motion for Judgment as a Matter of Law

Rule 50(a) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the
> court finds that a reasonable jury would not have a legally sufficient
> evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
> >
> > (B) grant a motion for judgment as a matter of law against the
> > party on a claim or defense that, under the controlling law, can
> > be maintained or defeated only with a favorable finding on that
> > issue.

Fed. R. Civ. P. 50(a)(1).

To grant a motion under Rule 50, the Court must find "'there is no legally

sufficient evidentiary basis for a reasonable jury to find' for the non-moving

party." Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting

Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir.

2001)); see also Burrell v. Okla. Dep't of Transp., 28 F.3d 112 (10th Cir. 1994).

In considering a Rule 50 motion, the Court focuses on the sufficiency of the

evidence. Chaney, 483 F.3d at 1227. The Court must "review all of the evidence

in the record and must draw all reasonable inferences in favor of the nonmoving party." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir. 2004).  Credibility determinations, the drawing of inferences, and the weighing of competing evidence are functions for the jury, not the Court.  Id. at 1193.

Where the case has been submitted to the jury, the Court must deny the motion and affirm the jury verdict "unless there is no legal basis upon which the jury could have found for [the prevailing party]."  See Nebula Glass Int'l, Inc. v. Reichhold, Inc., 454 F.3d 1203, 1210 (11th Cir. 2006).

B.   Motion for New Trial

Rule 59(a)(1) of the Federal Rules of Civil Procedure provides:

> The Court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:  (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a)(1).  A motion for a new trial generally may be granted where "the verdict is against the weight of the evidence, . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the moving party; [or where there are] questions of law arising out of alleged substantial errors in admission or

9

rejection of evidence or instructions to the jury." <u>Montgomery Ward & Co.</u> <u>v. Duncan</u>, 311 U.S. 243, 251 (1940).

"A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" <u>Lipphardt v. Durango Steakhouse of Brandon, Inc.</u>, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting <u>Hewitt v. B.F. Goodrich Co.</u>, 732 F.2d 1554, 1556 (11th Cir. 1984)).  "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.'" <u>Lipphardt</u>, 267 F.3d at 1186 (quoting <u>Hewitt</u>, 732 F.2d at 1556).

C.     <u>ADEA Framework</u>[1]

1.     <u>General Principles</u>

"The ADEA prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age." <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1331 (11th Cir. 2013) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).  The

---

[1]     The Court relies primarily on <u>Godwin v. WellStar Health Sys., Inc.</u>, 615 F. App'x 518 (11th Cir. 2015) to articulate the ADEA standard and the cat's paw doctrine.

language "because of" in the ADEA statute means that the plaintiff must prove that the age discrimination was the "but for" cause of the adverse employment action. Godwin v. WellStar Health Sys., Inc., 615 F. App'x 518, 527 (11th Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Sims, 704 F.3d at 1332). A plaintiff may show age discrimination through direct or circumstantial evidence. Sims, 704 F.3d at 1332 (citing Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010)).

Where a plaintiff brings claims under the ADEA, "we analyze the allocation of burdens and the presentation of proof under the framework articulated" in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 797 (1973). Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination, "which 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" Kragor, 702 F.3d at 1308 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)); see Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). To make out a prima facie case of age discrimination under the ADEA, a plaintiff must show (1) "that she was a member of the protected group of persons between the ages of forty and seventy"; (2) "that she was subject to adverse employment

action"; (3) "that a substantially younger person filled the position that she sought or from which she was discharged"; and (4) "that she was qualified to do the job for which she was rejected." Kragor, 702 F.3d at 1308 (quotation marks omitted).

Once a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to rebut the presumption with evidence of a legitimate, non-discriminatory reason for the adverse employment action. See id.; Chapman, 229 F.3d at 1024. Because the burden is one of production, not persuasion, the defendant meets its burden by presenting evidence that "raises a genuine issue of fact as to whether" the legitimate, non-discriminatory reason was the true reason for the adverse employment action. Kragor, 702 F.3d at 1308.

If the employer produces a legitimate, non-discriminatory reason for the adverse action, the plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext." Brooks, 446 F.3d at 1163. To establish pretext, a plaintiff must show both that the reason given by the employer was false and that discrimination was the real reason. See id. The plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. Ultimately, however, a plaintiff must show that the discriminatory

12

reason was the but-for cause of the adverse employment action.  See Gross, 557

U.S. at 177; Sims, 704 F.3d at 1335.

### 2.      The "Cat's Paw" Doctrine

Under certain circumstances, a plaintiff can establish but-for causation even

where the person who ultimately decided to take the adverse employment action

was neutral and unbiased.  See Stimpson v. City of Tuscaloosa, 186 F.3d 1328,

1332 (11th Cir.1999) (citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236,

1249 (11th Cir.1998)).  Under the cat's paw doctrine, a plaintiff may establish

but-for causation if she shows that the unbiased decision-maker followed a "biased

recommendation without independently investigating the complaint against the

employee."  Id.  "In such a case, the recommender is using the decisionmaker as a

mere conduit, or cat's paw[,] to give effect to the recommender's discriminatory

animus."  Id. (quotation marks omitted).  The Eleventh Circuit has analyzed

whether the ultimate decision was merely a "rubber stamp" of the recommendation

when considering whether the decision-maker acted as a "cat's paw."  See id.

The Eleventh Circuit has held that, in order to succeed under a cat's paw

theory of liability, an ADEA plaintiff must show more than that her adverse

employment action would not have occurred in the absence of the action taken by

the individual with the alleged unlawful animus.  Rather, the plaintiff must show

that the biased individual's action had a "determinative influence" on the ultimate decision, see Sims, 704 F.3d at 1335-36, or was a "determinative cause," see Simmons v. Sykes Enters., Inc., 647 F.3d 943, 950 (11th Cir. 2011). And the but-for cause that a biased individual recommended that the plaintiff's employment be terminated does not constitute a "determinative cause" where "undisputed evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination." See id. at 950.

## III.   ANALYSIS

### A.   Motion for Judgment as a Matter of Law

Defendant argues the evidence at trial was legally insufficient to sustain a verdict in Plaintiff's favor, including because (1) Plaintiff did not show that Ms. Brown treated her differently because of her age, (2) Ms. Brown recommended Plaintiff's termination for legitimate, non-discriminatory reasons, and (3) even if Ms. Brown recommended Plaintiff's termination because of her age, the recommendation was not the determinative influence on Mr. Trupiano's termination decision.

1.    Ms. Brown's Discriminatory Animus and Recommendation

With respect to Ms. Brown's comments to Plaintiff asking her age and why she was still working at her age rather than at home with her husband, Defendant argues that the "undisputed context of this conversation is that Brown was simply trying to sympathize with [Plaintiff].  As such, this conversation does not show age bias."  ([134.1] at 7).  The Court disagrees.  Defendant argues a single self-serving inference from the evidence.  The facts are that the statements themselves made by Ms. Brown, coupled with Plaintiff's and Ms. Bryant's testimony that Ms. Brown was "very tart," "very abrupt," and not a "nice person" to Plaintiff, (Tr. 538-39, 592), supports that the statements made were ageist, allowing a reasonable jury to infer that Ms. Brown was not trying to sympathize with Plaintiff when she asked her age and why she was still working.

Defendant next argues that the comments were made during a conversation three months before Plaintiff's termination, and thus are too remote in time to provide any basis to infer that Ms. Brown's recommendation was a pretext for discrimination.  ([134.1] at 7).  In support of its argument, Defendant relies on Jenner v. Bank of Am. Corp., 304 F. App'x 857 (11th Cir. 2009).  Defendant misreads Jenner.  In Jenner, the Eleventh Circuit found that a comment made three or four months before termination did not "suggest anything about" the

15

decision-maker's state of mind when he agreed months later to terminate the plaintiff's employment.  Id. at 859.  The court read the comment "in conjunction with the entire record" and considered it together with the other evidence presented to find that it did not provide substantial evidence of discriminatory animus.  Id. (quoting Ross v. Rhodes Furniture, 146 F.3d 1286, 1291 (11th Cir. 1998)).  Defendant dismisses Ms. Brown's comments by focusing on the comments in isolation, rather than in the context of the entire record.  Reading Ms. Brown's comments in conjunction with her other statements and actions—which are discussed below—could allow a reasonable jury to find that Ms. Brown had a discriminatory animus against Plaintiff and that her termination recommendation was a pretext for unlawful discrimination.

With respect to Ms. Brown's comments that Plaintiff "should have made provision for being out of work when you were young," (Tr. 592, 643, 773), and "why are you relying on [Defendant] for your insurance," (Tr. 643), Defendant argues that courts have found that inquiring about retirement plans of retirement-age employees is not enough to show discrimination.  The cases upon which Defendant relies are not binding on the Court, and, in any case, do not apply here.  Defendant relies primarily on Zeigler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d 671 (9th Cir. 1988).  In Zeigler, the Eighth Circuit affirmed summary

judgment for the employer where the only evidence to support age discrimination was four questions about retirement over a period of three years and the plaintiff's receipt of poor evaluations.  The court concluded that "suggesting retirement to an employee who is eligible for retirement, and who is not performing satisfactorily, [does not] provide[] a reasonable basis for inferring age discrimination."  Id. at 676; cf. Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992) ("[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.").  Here Ms. Brown's alleged statement that Plaintiff "should have made provisions for being out of work when you were young" is not an inquiry regarding retirement nor is it a suggestion that she retire.  There does not appear to be any reason for the statement, and, read in conjunction with the testimony that Ms. Brown treated Plaintiff poorly, could lead a reasonable jury to infer Ms. Brown harbored a discriminatory animus.

With respect to Ms. Brown's alleged comments that Plaintiff was not mentally capable of understanding her job and that she was going to put people lacking computer skills out to pasture, Defendant argues these statements do not demonstrate pretext because there is no evidence that Ms. Brown made the comments because of any age bias.  Defendant argues that Ms. Brown is entitled to

prefer employees with computer skills to perform the duties of the buyer position, and that, while it is insensitive for Ms. Brown to comment on Plaintiff's mental capacity, there is no evidence that Ms. Brown made the comment because of Plaintiff's age.  ([134.1] at 9).  The Court disagrees.  While Defendant's interpretation of Ms. Brown's comments is sensible—or even probable—a Rule 50 motion requires the Court to draw all reasonable inferences in favor of Plaintiff. See Cleveland, 369 F.3d at 1192-93.  Doing so, and reading these comments in the context of the record as a whole, including other age-related comments, the Court finds a reasonable jury could infer that these statements evinced a discriminatory animus against older workers.

The Court finds Plaintiff presented sufficient evidence for a reasonable jury to find that Ms. Brown's termination recommendation was based on Plaintiff's age. The Court's conclusion is supported by the Eleventh Circuit, which found that the following evidence created a genuine issue of material fact as to whether Ms. Brown's termination recommendation was motivated by age:  (1) Ms. Brown asked why, at her age, was she still working; (2) Ms. Brown stated that, at Plaintiff's age, she should be home with her husband; (3) Ms. Brown said Plaintiff should have planned for certain expenses when she was young; (4) Ms. Brown stated Plaintiff was not capable of mentally understanding her job; (5) Ms. Brown

stated Plaintiff should probably be home with her husband because he was ill; and

(6) Ms. Brown stated that Brown was going to put Plaintiff out to pasture.

Godwin, 615 F. App'x at 528.  In addition to the statements discussed above,

Plaintiff presented, among other evidence, testimony that Ms. Brown spent more

time with younger employees and that Ms. Brown referred to older workers as

"legacy employees."  The Court finds Plaintiff presented sufficient evidence for a

reasonable jury to find that  Ms. Brown's termination recommendation was

motivated by age.[2]

### 2.   Mr. Trupiano's Termination Decision

Defendant next argues that, even if Ms. Brown recommended Plaintiff's

termination based on her age, the recommendation was not the determinative

influence on Mr. Trupiano's termination decision.  ([134.1] at 13).  An ADEA

plaintiff must show more than that her adverse employment action would not have

occurred in the absence of the action taken by the individual with the alleged

---

[2]     The parties argue extensively whether the evidence showed Ms. Brown
recommended Plaintiff's termination for legitimate, non-discriminatory reasons.
The Court has determined that there was legally sufficient evidence presented at
trial for a reasonable jury to find that Ms. Brown's termination recommendation
was pretext for unlawful discrimination.  That there also was evidence presented
that could support that Ms. Brown's recommendation was based on legitimate,
non-discriminatory reasons rather than on unlawful age discrimination is irrelevant
in considering a Rule 50 motion, because the weighing of competing evidence is a
function for the jury, not the Court.  See Cleveland, 369 F.3d at 1193.

unlawful animus.  <u>Godwin</u>, 615 F. App'x at 529.  The but-for cause that a biased

individual recommended that the plaintiff's employment be terminated does not

constitute a "determinative cause" where "undisputed evidence in the record

supports the employer's assertion that it fired the employee for its own unbiased

reasons that were sufficient in themselves to justify termination."  <u>Id.</u> (quoting

<u>Simmons</u>, 647 F.3d at 950).

Defendant argues that Mr. Trupiano (1) relied on multiple reports of

Plaintiff's purchasing order errors, (2) participated in Defendant's progressive

discipline of Plaintiff, and (3) conducted his own independent assessment of the

errors on the purchase orders and determined the errors were unacceptable.

Defendant concludes that the evidence is "overwhelming" that Ms. Brown's

recommendation was not a "determinative influence" on Mr. Trupiano's

termination decision, and that no reasonable juror could find in favor of Plaintiff

on this ground.  The relevant inquiry is not whether the evidence is

"overwhelming," but whether the evidence in Plaintiff's favor is legally sufficient.

<u>See</u> <u>Chaney</u>, 483 F.3d at 1227.

Plaintiff relies primarily on Mr. Trupiano's following testimony:

Q.  Now, Mr. Trupiano, I am going to ask you a "but for" question.  If
Cherise Brown had not come to you and recommended [Plaintiff]'s
termination, would you have approved her termination or would you
have terminated her on your own?

20

A.  I would not have had the knowledge to terminate her on my own.

(Tr. 503).  Defendant argues that this evidence is legally insufficient, because

Mr. Trupiano conducted his own independent investigation by reviewing some of

Plaintiff's purchase orders and deeming the errors in them unacceptable.

In explaining independent investigations in the context of the cat's paw

doctrine, the Supreme Court has explained:

> [I]f the independent investigation relies on facts provided by the
> biased supervisor—as is necessary in any case of cat's paw liability—
> then the employer (either directly or through the ultimate
> decisionmaker) will have effectively delegated the factfinding portion
> of the investigation to the biased supervisor.

Staub, 562 U.S. at 421.  Mr. Trupiano testified that his knowledge regarding

Plaintiff's performance was confined to purchase orders given to him by

Ms. Brown.  (Tr. 493, 496).  Because his knowledge was limited to these purchase

orders, he did not know that Plaintiff handled a higher volume of purchase orders

than most of the other purchasers.  (See Tr. 500).  He also did not know whether

the reports provided to him by Ms. Brown were complete.  (See Tr. 502).  Because

Mr. Trupiano's investigation relied only on purchase orders provided by

Ms. Brown, the Court finds the evidence is insufficient to determine, as a matter of

law, that his investigation was independent.  Drawing all reasonable inferences in

Plaintiff's favor, a reasonable jury could conclude that Ms. Brown's biased

recommendation was the determinative influence on Mr. Trupiano's termination decision, and that he did not conduct an unbiased independent investigation. Because there is legally sufficient evidence for a reasonable jury to find in favor of Plaintiff, Defendant's Motion for Judgment as a Matter of Law is denied.  The Court next considers Defendant's Motion for New Trial.

B.     Motion for New Trial

In its Motion for New Trial, Defendant argues (1) the jury verdict is contrary to the great weight of the evidence, (2) liquidated damages should be set aside because Plaintiff offered insufficient evidence to prove a willful violation of the ADEA, (3) and improper evidence was introduced at trial.

1.     Weight of the Evidence

Defendant argues that the great weight of the evidence demonstrates that Ms. Brown recommended Plaintiff's termination for legitimate, non-discriminatory reasons.  "A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'"  Lipphardt, 267 F.3d at 1186 (quoting Hewitt, 732 F.2d at 1556).  "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a

minimum, the verdict is against the great—not merely the greater—weight of the evidence.'" Id. (quoting Hewitt, 732 F.2d at 1556).

Defendant argues that (1) every manager that supervised Plaintiff from April 2008 to her termination criticized Plaintiff for making errors on purchase orders, (2) Ms. Brown followed the "golden rule" in employment management by giving Plaintiff over six months to improve her performance, (3) the performance improvement plans were approved by Mr. Tifft, (4) Ms. Brown provided positive comments about Plaintiff where appropriate, demonstrating she did not treat her "coldly," and (5) Ms. Brown did not refuse to help Plaintiff.  ([135.1] at 3-8).  This evidence must be weighed against the substantial evidence in Plaintiff's favor, which contradicts or undermines the evidence Defendant presents.  Plaintiff testified that Ms. Brown made the following comments to her:

- "You're not mentally capable of understanding."  (Tr. 442, 449-450, 592, 616-617);

- "Some people are going to be put out in the pasture."  (Tr. 343, 737);

- "You should have made provision for being out of work when you were young."  (Tr. 592, 643, 773);

- "You should be at home with your husband."  (Tr. 592, 643);

- "Why are you relying on [Defendant] for your insurance."  (Tr. 643);

- "Obviously just can't understand what I am saying."  (Tr. 643).

Ms. Brown testified that she made the following comments to Plaintiff:

- "How old are you?"  (Tr. 206, 440);

- "At your age, why are you still working?"  (Tr. 206, 441, 592, 770-771);

- "You are past retirement age, why are you still working?"  (Tr. 206, 441, 491, 592, 643, 770-771);

- "At your age, I would think you would want to be home taking care of your husband."  (Tr. 441-42, 454, 592, 643).

Other employees testified that Ms. Brown made the following comments to

or about older workers:

- "At this day and age, I don't think there were many computer savvy people in the Purchasing department."  (Tr. 431-343);

- "I don't believe you have the capability to use Excel."  (Tr. 342);

- "People who do not have the computer skills are going to be put out of the pasture."  (Tr. 343:4-10);

- "I want people who can hit the ground running."  (Tr. 347);

- Ms. Brown referred to older workers as "legacy employees."  (Tr. 538, 563).

Ms. Brown also told David Wells, a former employee of Defendant, that she was

"going to be all over [Plaintiff]."  (Tr. 341).

24

The following evidence and testimony was presented with respect to

Ms. Brown's general treatment of Plaintiff:

- Ms. Brown spoke harshly to Plaintiff.  (Tr. 538-39);

- Ms. Brown refused to coach or counsel Plaintiff on her performance improvement plans.  (Tr. 597-98, 600, 615-16);

- Ms. Brown did not provide Plaintiff with any training on how to conduct an RFP, but criticized Plaintiff's performance for failing to properly prepare an RFP.  (Tr. 326-27, 486, 506);

- In recommending Plaintiff's termination, Ms. Brown created two non-standard performance summaries for Plaintiff with a superimposed WellStar logo.  (Tr. 207-208, 460-61, Ex. J32, P32);

- Lynn Bryant testified Ms. Brown told her she was no longer allowed to help Plaintiff, despite that helping Plaintiff and other buyers was part of Ms. Bryant's job as systems specialist.  (Tr. 540-41);

- Ms. Brown spent more time with younger employees.  (Tr. 348-49).

The Court finds that there is substantial evidence to support both

Defendant's position and Plaintiff's position.  The Court cannot conclude on the

record before it that the "great" weight of evidence supports Defendant's position.

See Lipphardt, 267 F.3d at 1186.

The Court also does not find that the great weight of evidence supports

Defendant's position that Mr. Trupiano independently investigated Ms. Brown's

termination recommendation.  Though Mr. Trupiano testified that he reviewed

purchase orders presented to him by Ms. Brown and found unacceptable errors, he

testified that he knew Ms. Brown had been accused of age bias, that his termination review was limited to documents presented to him by Ms. Brown, and that he did not conduct an independent investigation to find out whether the errors in Plaintiff's purchase orders were greater or less than the errors in the purchase orders of other buyers.  (Tr. 491-501).  Defendant's Motion for New Trial based on the weight of the evidence is denied.

### 2.   Liquidated Damages

Defendant argues that liquidated damages should be set aside because Plaintiff offered insufficient evidence to prove a willful violation.  ([135.1] at 9).  As an initial matter, the Court notes that Defendant does not appear to claim that a new trial under Rule 59(a)(1) is required on the basis of willfulness.  Instead, Defendant appears to seek, under Rule 50, judgment as a matter of law that Plaintiff presented insufficient evidence to support a finding of willfulness.  The Court finds that, under either standard, Defendant's argument fails.

The jury awarded to Plaintiff compensatory damages in the amount of $186,920.42, and found that Defendant's violation of the Age Discrimination in Employment Act ("ADEA") was willful.

> The ADEA incorporates the enforcement powers, remedies, and procedures of the Fair Labor Standards Act ("FLSA") set forth in 29 U.S.C. § § 211(b), 216 (except for subsection (a)), and 217.  29 U.S.C. § 626(b).  The enforcement provision of the [ADEA] expressly

26

> provides for imposition of liquidated damages payable "in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The FLSA further provides that "[a]ny employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages. 29 U.S.C. § 216(b). Thus, when a jury finds that an employer willfully violated the ADEA, the basic damages award may be doubled under this liquidated damages provision.

Potence v. Hazelton Area School Dist., 357 F.3d 366, 372 (3rd Cir. 2004).

Willfulness exists when the employer knew its conduct was prohibited or showed reckless disregard for whether its conduct was prohibited by the ADEA. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985). Generally, willfulness is a question of fact for the jury, and the jury's finding on that issue is not to be readily disturbed. See Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1561 (11th Cir. 1988).

Defendant argues that the evidence, at best, demonstrates only that Ms. Brown, a rogue employee, duped Defendant into discriminating against Plaintiff. ([135.1] at 10; [144] at 6). In support of its argument, Defendant points to its policies prohibiting age discrimination, its training of employees concerning these policies, (Tr. 482), and its initiation of an investigation into Plaintiff's complaints against Ms. Brown, (Tr. 446-47, 480-81). ([135.1] at 10-11). Plaintiff notes that Mr. Trupiano failed to independently investigate Ms. Brown's

termination recommendation, despite (1) his awareness of Plaintiff's complaints against Ms. Brown, (2) his knowledge of and concern regarding Ms. Brown's comments to Plaintiff, and (3) his awareness of an HR investigation regarding Plaintiff's complaints against Ms. Brown.  To the extent Defendant seeks judgment as a matter of law with respect the jury's finding of a willful ADEA violation, the Court finds Plaintiff presented sufficient evidence to support the jury's finding that Defendant acted in reckless disregard of the law.  To the extent Defendant seeks a new trial on the question of willfulness, the Court finds that Defendant fails to show that the "great" weight of evidence supports its position.

### 3.   Allegedly Improper Evidence

Defendant next argues that a new trial is warranted because Plaintiff introduced evidence and theories that unduly prejudiced Defendant and confused the jury.  ([135.1]).  When misconduct of counsel is the basis for a new trial, that misconduct must be "such as to impair gravely the calm and dispassionate consideration of the case by the jury."  BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1474 (11th Cir. 1992) (internal quotation marks omitted).  In the context of determining whether to set aside a jury verdict because of improper closing argument statements, the Eleventh Circuit has looked to the entire argument, "the context of the remarks, the objection raised, and the curative

instruction . . . ." Hilger v. Velazquez, 613 F. App'x 775, 776 (11th Cir. 2015)

(quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1282 (11th Cir. 2008)).

Defendant identifies the following evidence and argument it contends was

improperly introduced

- Plaintiff's counsel told the jury during opening statements that this is a case under the Americans with Disabilities Act. (Tr. 127);

- Plaintiff's counsel solicited information about Plaintiff's alleged disability. (Tr. 159, 178-82);

- Plaintiff stated she had health issues after the Court specifically told her such information should not be provided to the jury. (Tr. 602);

- Plaintiff stated she lost her home as a result of losing her job, despite the Court's order barring such evidence. (Tr. 651);

- Plaintiff testified Ms. Brown made racist remarks. (Tr. 738);

- Plaintiff's counsel solicited information, in violation of the Court's order, about who terminated David Wells and about Wells's age at the time of his termination. (Tr. 146-47; 228-29).

With respect to Plaintiff's counsel's reference to the Americans with

Disabilities Act, Defendant did not object when this statement was made, and did

not ask for a curative instruction after Plaintiff's counsel apologized for what he

characterized as his mistake. Plaintiff's counsel also stated he was "ready at any

time to apologize to the jury for mentioning the ADA," (Tr. 381), an offer to which

Defendant did not respond.

The questions regarding Plaintiff's alleged disability were with respect to her osteoarthritis and rheumatoid arthritis, (Tr. 159, 178), two conditions relevant to Plaintiff's ADEA claim that Ms. Brown discriminated against her on the basis of her age.  Plaintiff also testified she has "some health issues that require" her to take some breaks during the workday.  (Tr. 602).  The Court provided the jury with the following curative instruction:  " . . . let me give you an instruction because the plaintiff just mentioned, quote, health issues, closed quote.  The health issues to which the plaintiff referred are not related to the claim in this case, and you should disregard plaintiff's mention of any health issues."  (Tr. 604-605).  The Court finds that Plaintiff's stray reference to health issues, in light of the Court's curative instruction, did not unduly prejudice Defendant.

Similarly, Plaintiff's reference to the loss of her home was followed by the following curative instruction:  "I previously entered an order in this case advising the parties that the plaintiff's claim that she lost her house is not proper or admissible evidence in this case . . . .  So you shall disregard that answer."  (Tr. 652).  Plaintiff's counsel stated he did not know Plaintiff would testify as to the loss of her house, and apologized to the Court.  (Tr. 652).  Defendant contends that the jury's question whether it could award greater damages than those sought by Plaintiff's counsel "strongly suggests that it was impacted by [Plaintiff]'s improper

testimony about losing her home." ([144] at 8).  The Court finds such an inference

is unwarranted, because the jury's question may have been motivated by any

number of factors, including the extent to which the jury believed Defendant's

unlawful conduct was willful.

      With respect to Plaintiff's reference to Ms. Brown's racist remarks, Plaintiff

testified as follows:

> A.  . . .  I believe [Brown] was trying to cover up for what she was
> trying to do for the aegis [sic], racist statements.
>
> Q.  Now, you—
>
> A.  Aegis [sic] statements that she made.  I'm sorry.

(Tr. 738).  In context, it is clear Plaintiff's "racist" reference was a mistake that she

immediately corrected.  Defendant did not seek a curative instruction or object to

Plaintiff's testimony at trial.  There is no evidence to suggest the jury's

consideration of the facts and claims at issue were gravely impaired by Plaintiff's

stray, albeit unfortunate, remark.

      Regarding the testimony regarding Mr. Wells's age and termination,

Ms. Brown testified as follows:

> Q.  . . . .  Did you recommend that David Wells be terminated?
>
> A.  Who is David Wells?

Q.  David Wells worked in your department.  Do you remember David Wells?

A.  Not in particular.

Q.  You don't remember him?

A.  Can you describe him?  I tend to remember more by face and appearance.

Q.  African-American man?

A.  Tall African-American man?  There was only one.

Q.  Yes, ma'am, in his 60s?

A.  I don't know his age, but I do remember an African-American male in the department.  There was only one.

Q.  Did you terminate him?

A.  I cannot recall.  I'm sure it would be in the records.

(Tr. 146-48).  Ms. Brown also testified:

Q.  Did you terminate David Wells at about the same time you terminated Mary Godwin?

A.  I can't say definitively.  It would definitely be reflected in the employee records.

Q.  Do you recall terminating David Wells?

A.  I do recall terminating David Wells.  The timing I can't recall.

(Tr. 228-29).

The jury asked the following question:  "The jury wants to know if David Wells was terminated or did he resign.  If he was terminated, was he terminated by Cherise Brown."  (Tr. 955).  The Court, without objection from the parties, responded:  "I have reviewed your questions.  You must reach your verdict based on the testimony and other evidence that was presented during the trial."  (Tr. 955). The jury also asked:  "[M]ay we have Cherise Brown's deposition, please[,]" and "[m]ay we have David Wells's deposition please?"  (Tr. 947).  The Court, without objection from the parties, responded:  "I have reviewed your questions.  The only testimony that you may consider is the testimony that was presented during the trial of this case."  (Tr. 947).  Defendant contends the testimony with respect to Mr. Wells unduly influenced the jury, as evidenced by their questions.

The type of evidence excluded by the Court in its November 19, 2015, order on the parties' motions *in limine* was "witnesses' statements of their belief that they too suffered discrimination[,]" including the testimony of David Wells that he believed Ms. Brown discriminated against him because of age.  ([76] at 11, 13). The Court reasoned that "admission of this kind of speculative evidence would effectively require a mini-trial to litigate whether the witnesses were, in fact, 'discriminated' against."  (Id. at 13).  Ms. Brown's testimony quoted above is not the type of testimony excluded by the Court's order.  No testimony was elicited

with respect to any individual's belief that Ms. Brown discriminated against him or her on the basis of age.  Plaintiff's counsel's reference to Mr. Wells's age was plainly in response to Ms. Brown's inability to remember Mr. Wells, and her request that counsel "describe him."  Defendant did not object to these passing references.  Mr. Wells, who testified at trial, did not discuss the circumstances of his termination, his age, or his belief as to why he was terminated.

Though the jury's questions show there was some concern regarding whether Ms. Brown terminated Mr. Wells, the Court does not find that these questions and Ms. Brown's testimony show that the jury's "calm and dispassionate consideration" was "impair[ed] gravely."  BankAtlantic, 955 F.2d at 1474. Defendant's Motion for New Trial is denied.

## IV.   MOTION FOR EQUITABLE RELIEF

Plaintiff seeks, pursuant to 29 U.S.C. § 626(b), an award of front pay and prejudgment interest.  The Court considers these requests in turn.

### A.   Front Pay

Section 626(b) provides, in relevant part:

In any action brought to enforce this chapter the court shall have the jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be

> unpaid minimum wages or unpaid overtime compensation under this
> section.

29 U.S.C. § 626(b).  The purpose of the ADEA "is to make the plaintiff whole, to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer."  Wilson v. S & L Acquisition Co., L.P., 940 F.2d 1429, 1438 (11th Cir. 1991).  In addition to damages from the date of the unlawful employment action through the date of trial, "[i]n order to truly make a successful plaintiff whole, he or she is further entitled to either reinstatement or to what has come to be known as 'front pay,' that is, an amount of money awarded after trial in lieu of, or until reinstatement.  Front pay, like reinstatement, is a form of equitable relief which is determined by the court."  Brochu v. City of Riviera Beach, 304 F.3d 1144, 1163 n.31 (11th Cir. 2002) (citing Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 847-48 (2001)).  Both reinstatement and front pay are equitable remedies within the sound discretion of the trial court.  Pollard, 532 U.S. at 847-48; Ramsey v. Chrysler First, Inc., 861 F.2d 1541, 1545 (11th Cir. 1988).

The Eleventh Circuit has articulated a rule of "presumptive reinstatement" in wrongful discharge cases for victorious plaintiffs.  Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1338 (11th Cir. 1999) (quoting Williams v. Roberts, 904 F.2d 634, 639 (11th Cir. 1990)); see also Allen v. Autauga Cty. Bd. of Educ., 685 F.2d

35

1302, 1305 (11th Cir. 1982) ("[R]einstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required.").  "However, reinstatement is not always required as equitable relief.  We have recognized that when extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement."  Farley, 197 F.3d at 1339.  "Such circumstances include situations where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy."  Id. (internal quotation marks and alterations omitted); see also Mt. Haskins v. City of Boaz, 822 F.2d 1014, 1015 (11th Cir. 1987) (front pay "is an appropriate [equitable] remedy when reinstatement is impracticable or inadequate").  The Eleventh Circuit requires that a trial court "carefully articulate" its reasons for awarding front pay in lieu of reinstatement.  Farley, 197 F.3d at 1339.

A court denying equitable relief such as front pay "must carefully articulate its decision."  See Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1563 (11th Cir. 1988).  A court "may not factor in the liquidated damages award when considering [whether to grant] equitable relief because liquidated damages are punitive in nature."  Id. at 1562.  Front pay also may not be denied simply because prospective relief may be too speculative to be calculated.  Id.  "The duty to mitigate damages

by seeking employment elsewhere will, of course, limit the amount of front pay available."  Id.

Plaintiff testified that she would have continued to work beyond the age of 65 because she enjoys working and worked all her life, and that she would have continued to work "for the financial part of it" and because she "needed the insurance."  (Tr. 89, 174).  After Plaintiff was terminated, she looked for a job two to three times a week, and applied for numerous buyer positions at hospitals in Georgia and Tennessee, as well as positions in retail stores.  (Tr. 159-61, 174).  Plaintiff also provides documents detailing her efforts to find a job, which show she applied to a total of seventy (70) jobs in a seven (7) month period of time.  To date, Plaintiff has not been offered a job.  (Tr. 92, 161).  Plaintiff argues reinstatement is not an appropriate equitable remedy, because Plaintiff lives in Tennessee and Defendant only has locations in Georgia.  ([123.1] at 5).  "If the Court reinstated Plaintiff's employment, she would have to uproot herself, move away from her family, and spend unnecessary money on new housing."  (Id.). Plaintiff seeks front pay for a period of three and a half years as calculated from the evidence of her average annual increases during her employment with Defendant, and that the front pay be increased from year to year at a rate of 3% per year, reflecting her historical annual raises during her employment.  She also

requests the front pay include her employer's 2% 403(b) match.  She requests a

total front pay award of $156,331.44.  ([123.1] at 6-7; see also Pl.'s Ex. 29).

Defendant argues Plaintiff failed to diligently search for work.  ([136] at 4).

Defendant's only evidence in support of its argument is that Plaintiff "submitted on

average at most two (2) job applications each year for a buyer position" and that

Plaintiff could not state with any certainty whether she applied for any buyer

position during 2015.  (Id. at 4-5 (citing Tr. 734-35)).  As noted above, there is

ample evidence that Plaintiff applied to a variety of positions, not just buyer

positions, and that she could not definitively state whether she applied for a buyer

position in 2015 does not show she was not reasonably diligent in searching for

any employment.  Defendant also argues it is unlikely Plaintiff would have been

employed beyond June 2016, because she either would have retired or because she

would have been terminated due to her performance issues.  ([136] at 5-6).  The

undisputed evidence, however, shows that Plaintiff intended to continue working

past the age of 65.  Defendant's argument that Plaintiff would have been

terminated due to her performance issues is speculative, and seeks to relitigate

issues determined at trial.

In our Circuit, it is presumptive that a plaintiff be reinstated to her position.

This is the equitable remedy that best addresses the wrong alleged and the one that

most directly addresses, for the plaintiff and the employer, the wrongful conduct claimed.  That is, "reinstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required[,]" unless there are "extenuating circumstances warrant[ing] . . . front pay in lieu of reinstatement."  Farley, 197 F.3d at 1338-39 (quoting Allen, 685 F.2d at 1305).  The extenuating circumstances that rebut the reinstatement presumption are ones that make reinstatement "ineffective as a make-whole remedy[,]" such as reinstating an employee to an unacceptably hostile work environment or when reinstatement is impracticable or inadequate.  Id.; see also Mt. Haskins, 822 F.2d at 1015.  There is no authority that a plaintiff is entitled to the equitable remedy of her choice.  Front pay is permitted when reinstatement is not an appropriate remedy.

Here, Plaintiff at most alleges that front pay is preferred by her.  Although she would have to arrange to return to Georgia, there is no evidence in the record that reinstatement is impractical or inadequate.  Then, as now, she necessarily must incur living expenses, including housing.  The return to this State does not deny her the same access to her family that she had when she was employed.  Importantly, Ms. Brown, the person Plaintiff claimed was the cause of the discrimination, no longer is employed by Defendant, nor is Mr. Trupiano, the

person who made the ultimate decision to terminate Plaintiff based upon

Ms. Brown's recommendation.  There is no valid reason not to order reinstatement

in this case, including because there is no evidence Plaintiff is currently employed.

   B.   Prejudgment Interest

   Plaintiff also seeks prejudgment interest to be applied to her back pay award.

Prejudgment interest is a discretionary remedy available in ADEA cases.  King

v. CVS Health Corp., —— F. Supp. ——, 2016 WL 4157337, at *8 (N.D. Ala. Aug.

2, 2016) (citing Lindsey v. Am. Cast Iron Pipe, Co., 810 F.2d 1094, 1101 (11th

Cir. 1987)).  "Prejudgment interest, as a legal matter, is intended to compensate

injured parties both for the time value of lost money as well as for the effects of

inflation."  Id. (citation omitted).  "Thus, prejudgment interest is 'an element of

complete compensation.'"  Id. (quoting Loeffler v. Frank, 486 U.S. 549, 557

(1988)).

   In the Eleventh Circuit, the interest rate for prejudgment interest on back pay

awards under Title VII depends on the IRS prime rates calculated in accordance

with 28 U.S.C. § 1961.  McKelvy v. Metal Container Corp., 854 F.2d 448, 453

(11th Cir. 1988).  Courts in our Circuit have applied this methodology to cases

under the ADEA.  See, e.g., Stone v. GEICO Gen. Ins. Co., No. 8:05-CV-636-T-

30TBM, 2009 WL 3720954, at *2 (M.D. Fla. Nov. 5, 2009).

Using the NLRA methodology, Plaintiff requests $5,705.79 in prejudgment interest.  Defendant does not oppose Plaintiff's request for prejudgment interest. ([136] at 1 n.1).  The Court has reviewed Plaintiff's calculation, and concludes the amount is appropriate and should be awarded.

## V.      CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Wellstar Health Systems, Inc.'s Motion for Judgment as a Matter of Law [134] and Motion for New Trial [135] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Mary Godwin's Motion for Equitable Relief [123] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion is **GRANTED**, and Plaintiff is awarded prejudgment interest in the amount of $5,705.79.  Plaintiff's Motion is **DENIED** with respect to her request for front pay.  Plaintiff is entitled to have her employment with Defendant reinstated.

**SO ORDERED** this 6th day of October, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE